**GEORGIA DEPARTMENT OF HUMAN RESOURCES, et al., Plaintiffs,**

v.

**Terrell H. BELL, et al., Defendants.**

Civ. A. No. C80–1398A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 28, 1981.

Michael J. Bowers, State's Atty. Gen., Robert S. Stubbs, II, Executive Asst. Atty. Gen., H. Perry Michael, Sr. Asst. Atty. Gen., Carol Atha Cosgrove, Thomas D. Watry, Asst. Attys. Gen., Atlanta, Ga., for plaintiffs.

James E. Baker, U. S. Atty., Atlanta, Ga., Sarah L. Kemble, Asst. Gen. Counsel, U. S. Dept. of Ed., Washington, D. C., for federal defendants; Nina Loree Hunt, Asst. U. S. Atty., Atlanta, Ga., of counsel.

Susan Hoy, Stagg, Wildau, Simpson, Hoy & Oakley, Atlanta, Ga., for defendant Nash.

Marc Maurer, Baltimore, Md., for defendant-intervenor.

## ORDER

SHOOB, District Judge.

Plaintiffs seek review of an arbitration panel's decision under the Randolph-Sheppard Vending Stand Act, 20 U.S.C. § 107, *et seq.*, (cited as the Act). The case is now before the Court on the parties' cross motions for summary judgment. The parties to this action are the following: 1) *plaintiffs*, Georgia Department of Human Resources and Georgia Department of Human Resources, Division of Vocational Rehabilitation. Plaintiff Division of Vocational Rehabilitation is the single State agency of the State of Georgia designated, pursuant to § 107a(a)(5) and (e) of the Act, as the State agency responsible for the administration of the Act in the State of Georgia; 2) *defendants*, Terrell H. Bell, Secretary of the United States Department of Education, in his official capacity, United States Department of Education, Frederick Sachs, Acting Commissioner of Rehabilitation Services Administration, in his official capacity, Rehabilitation Services Administration, a subdivision of the Department of Education, and Jessie C. Nash, the complainant in the proceedings before the arbitration panel; 3) *defendant-intervenor*, the National Federation of the Blind (NFB), a nationwide membership organization of blind people with a membership of over 50,000. The parties have filed a "Joint Statement of Facts" and numerous briefs addressing the underlying issues.

## I. *Facts*

In October of 1973, the United States Marine Corps requested plaintiffs to place visually handicapped persons as operators of the snack bars and cafeterias at its Logistics Support Base (Atlantic) in Albany, Georgia, as part of the blind vendor program established by the State of Georgia, pursuant to the Act. Joint Statement of Facts at p. 1. Between October 1973 and January 1974, the Marine Corps and the State entered into agreements entitled "licenses" pursuant to which four facilities located at the base would be operated by vendors licensed under the State's vending facility program (cited as the program). *Id.* at p. 3. These facilities consisted of the main base cafeteria building (building 3600); a smaller cafeteria in the repair division (building 2200); a snack bar in the main administration building (building 3500); and a snack bar in the maintenance building (building 5500). *Id.* The building 2200 facility was classified on the "licenses" as a "cafeteria" and was to provide "food items, tobacco products, and various sundry items."[1] *Id.* at p. 3, n. 4.

The individual "licenses" covering buildings 2200 and 3500 were expressly made contingent upon the program's acceptance of the building 3600 cafeteria no later than December 1, 1973. *Id.* at p. 3. The "licenses" were for a term of one year, with an automatic renewal clause, and revocable by

---

1. The status of the vending facility in building 2200 is the subject of this litigation; in particular whether this facility was a "cafeteria" or a vending facility other than a cafeteria.

the State upon 30 days notice and by the Corps without notice. *Id.*

Sometime during the summer of 1976, the blind vendor originally selected by the State to operate the building 2200 facility became disabled and the program placed a sighted substitute vendor in his place. *Id.* at p. 6. Although this facility was classified as a "cafeteria" in the "licenses", at this time it was operated as a snack bar due to equipment breakdown. *Id.* Defendant Nash asked the program to place her in the building 2200 facility.[2] *Id.* The State advised her that this assignment might be temporary, three to six months, because the Marine Corps Food Service Board was assessing whether to solicit bids for a single contract to provide cafeteria services for the entire base. *Id.* Nash admitted that she was advised of the uncertain status of the assignment. *Id.* Furthermore, the Marine Corps corroborated the fact that Nash was so advised. *Id.* at p. 7. Under these circumstances Nash took over operation of the building 2200 facility as a snack bar, given the equipment breakdown. *Id.*

In the fall of 1976 the Marine Corps informed the program that it planned to solicit bids for the provision of hot food service in buildings 3600, 2200 and 5500 and that bidders would be required to bid on these facilities as a package. *Id.* The program advised the Corps of its interest in retaining the building 2200 facility, operated by Nash, and the snack bar in building 5500. *Id.* at p. 8. However, the program declined to bid for the package, as requested by the Corps, as in its view it was not in the best interest of the program to branch out into full-service cafeteria operations. *Id.* at p. 9.

After a number of exchanges between the Corps and the program regarding the base's dining facilities, on February 10, 1977 the Corps awarded a cafeteria contract for the base's facilities to Dinner Bell Catering Service. *Id.* at p. 12. On March 9, 1977, the program informed Nash of the award and officially notified her that "her stand location in building 2200 is being terminated by the Marine Base as of mid-April." *Id.* On March 17, 1977 the Corps wrote to the State to terminate the permit for the building 2200 facility as of April 15, 1977. *Id.*

Between February and April of 1977, the program offered two alternative vending stands to Nash, one at the Naval Dispensary in Albany, Georgia, and the other in a paint factory. *Id.* In November 1977, Nash was assigned to a facility in Leesburg, Georgia, and at the time of the arbitration hearing, held in late 1979, was operating another facility within the program. *Id.* at p. 13.

II. *Procedural history*

On February 14, 1977, Nash filed a request for a full evidentiary hearing before the Georgia Department of Human Resources concerning the termination of her vending stand in building 2200.[3] *Id.* at p. 15. The State acknowledged Nash's request on February 24, 1977, and informed her she would be notified of the scheduling of the hearing. *Id.* On April 19, 1977, Nash, after being notified of the impending closing of her facility, filed suit in this Court against the State licensing agency and the U.S. Department of Defense to restrain the said termination until after a hearing was held before the Georgia De-

2. Nash had previously operated the building 3600 cafeteria, between January 1974 and October 1975. The program discontinued this operation, with the Marine Corps' and Nash's acquiescence, because it was unprofitable.

3. This request was made pursuant to 20 U.S.C. § 107d–1(a), which states as follows:

Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a state licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 3(6) of this Act [20 U.S.C. § 107b]. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary [of the United States Department of Education] who shall convene a panel to arbitrate the dispute pursuant to section 6 of this Act [20 U.S.C. § 107d-2], and the decision of such panel shall be final and binding on the parties except as otherwise provided in this Act. [20 U.S.C. § 107, et seq.]

partment of Human Resources. *Id.* On April 28, 1977, the Court denied her application for injunctive relief and dismissed her action for failure to exhaust administrative remedies; thereafter, Nash appealed to the Fifth Circuit. *Id.*

On May 12, 1977, the Georgia Department of Human Resources' hearing officer dismissed Nash's request for a hearing, asserting lack of jurisdiction. *Id.* at p. 17. He noted that he could not provide the ultimate relief sought by Nash, cancellation of the Marine Corps' cafeteria contract and her reinstatement at the building 2200 facility. *Id.* Accordingly, on May 27, 1977, Nash filed a complaint with the Secretary as provided in 20 U.S.C. § 107d–1(a).[4] *Id.* On June 8, 1977, Nash dismissed her appeal before the Fifth Circuit. *Id.*

On August 17, 1977, the Secretary advised Nash that it was unable to convene an arbitration panel because she had not been afforded the State hearing, which was a condition precedent to convening such a panel. *Id.* at p. 18. Therefore, the Secretary remanded the matter to the State for a hearing on a number of the issues raised by Nash's complaint. *Id.* On December 2, 1977, the State hearing officer, after conducting the State hearing, dismissed Nash's claims. *Id.*

On December 16, 1977, Nash filed a second complaint with the Secretary to convene an arbitration panel. *Id.* On December 29, 1977, the State moved to dismiss, asserting (1) that the complaint was not sufficiently specific, (2) that it failed to state a claim upon which relief could be granted, (3) that it was specious and harassing, and (4) that the relief sought was beyond the authority of the panel. *Id.* at p. 19. On April 12, 1978, the Secretary denied the State's motion to dismiss, but dismissed the U.S. Department of Defense as a named respondent and "those claims for relief that relate either directly or in an ancillary fashion to DOD and its termination of its permit relationship with the Georgia State licensing agency for the operation of a vend-

ing facility in building 2200." *Id.* Also on April 12, 1978, the Secretary convened an arbitration panel to resolve the remaining claims for relief. *Id.* In December of 1978, the State again requested dismissal of Nash's complaint. In April 1979, the Secretary denied the State's request.

Finally, in October and December of 1979, the arbitration panel held hearings on Nash's complaint. On June 24, 1980, the panel's chairperson issued her decision, with a concurrence and a dissent. On August 14, 1980, plaintiffs filed this action, pursuant to 28 U.S.C. § 1331 (federal question), 20 U.S.C. § 107d–2(a) (Randolph-Sheppard Act) and 5 U.S.C. § 704 (Administrative Procedure Act), seeking, inter alia, reversal of the panel's decision. On September 1, 1981, the Court granted the National Federation of the Blind's motion to intervene.

### III. *Discussion*

■ Defendant Nash contends, as a preliminary matter, that plaintiffs' action was untimely filed; therefore, this Court lacks subject matter jurisdiction. The Court finds the complaint to have been timely filed. Accordingly, the Court has jurisdiction over this action.

The arbitration award is "subject to appeal and review [in this Court] as a final agency action for purposes of chapter 7 of such title 5 [5 U.S.C. § 701, et seq.]." 20 U.S.C. § 107d–2(a). Section 706 of Title 5 sets forth this Court's scope of review as follows:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

---

4. See n. 3, infra.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Plaintiffs contend that the arbitration award should be reversed for a number of reasons; Federal defendants also seek reversal of the award. On the other hand, defendant Nash and intervenor NFB seek enforcement of the award. Before addressing the merits of the parties' contentions it is necessary to determine whether Federal defendants have the right to oppose the arbitration panel's decision in this proceeding.

Defendant Nash argues that, pursuant to the Act, the decision of the arbitration panel, as final agency action, is the position of the Secretary. In other words, Nash contends that the Federal defendants are by law required to support the panel's decision.[5] Federal defendants argue that the Secretary is not bound by law to take the position of the panel and is not foreclosed from advancing alternative positions to the Court. Otherwise, Federal defendants contend, their statutory duty to carry out the Act and to ensure the uniform administration of the program would be jeopardized. See 20 U.S.C. § 107a(a)(1).

■ The Court finds that the Secretary is not precluded by the Act from advancing alternative positions and/or opposing the panel's decision. Nash's argument that 20 U.S.C. § 107d–2(a), which provides that the panel's decision "shall be subject to appeal and review as a final agency action...", precludes the Secretary from second guessing an arbitration panel is not persuasive. In this instance, as in others, the Secretary was not a party before the arbitration panel; therefore, he did not have an opportunity to advance his interpretation of the Act. Furthermore, allowing the Secretary to present his views before this Court does not render the panel's decision less final than otherwise. Thus, Nash's objections to the Secretary's right to assert his interpretation of the Act before this Court are without merit.

Federal defendants disagree with the panel's finding that the vending facility in building 2200 was entitled to priority under the Act at the time Nash's "license" was terminated by the Marine Corps. This finding is premised on a factual finding that Nash's vending facility was not a "cafeteria." Federal defendants contend that this facility was a "cafeteria" and that the panel's finding to the contrary is not supported by the record. Thus, they argue the State had no duty pursuant to the Act to attempt to retain the said facility, given its status as a "cafeteria."[6]

■ The Court, after a careful review of the record, finds the panel's determination that the vending facility in building 2200 was not a "cafeteria", at the time Nash's

---

5. The arbitration panel convened by the Secretary to hear Nash's grievance pursuant to 20 U.S.C. § 107d–2(b)(1) was composed of three members: one designated by the State licensing agency; one by defendant Nash; and the chairperson designated by the two other panel members.

6. Federal defendants contend that "cafeterias" were not entitled to priority under the Act, pursuant to 20 U.S.C. § 107d–3, at the time Nash was officially notified of the termination of her facility.

"license" was terminated by the Marine Corps, to be supported by substantial evidence. Therefore, the Court UPHOLDS the panel's conclusion that Nash's facility was entitled to priority under the Act. Accordingly, it is necessary to discuss plaintiffs' and Federal defendants' other objections to the panel's decision.

First, the panel held that the State, in acquiescing to the termination of Nash's vending facility, failed to fulfill its obligation under section 107(a) of the Act, 20 U.S.C. § 107(a), "to provide blind persons with remunerative employment..." Panel's Award at pp. 34, 45. The Court finds this reading of Section 107(a) to be erroneous.[7] Section 107(a) does not create specific obligations on the State separate and in addition to the specific requirements of the Act. In the recent case of *Pennhurst State School and Hospital, et al., v. Halderman, et al.,* 451 U.S. 1, 18, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981), the Supreme Court refused to imply substantive rights and obligations from the general language of the statutory "bill of rights", for the developmentally disabled. The Court held that the provisions of the statute's "bill of rights", when compared to the more specific sections of the Act, represented general statements of federal policy and not newly created legal duties. *Id.* at 1544. Analogously, the Court finds that section 107(a) of the Act does not impose any separate or additional obligations upon the State.

Second, the panel held that the State violated section 107d–1(b)[8] of the Act by failing to file a complaint with the Secretary to arbitrate the Marine Corps' alleged failure to follow the Act in the termination of Nash's license.[9] Panel's Award at pp. 17, 47. Plaintiffs contend the panel read section 107d–1(b) as placing a mandatory and non-discretionary duty upon the State to file a complaint with the Secretary. Defendant Nash argues the panel did not construe section 107d–1(b) as always requiring the State to file a complaint, but to do so when the Federal agency's termination or interference with a blind vendor's "priority" could arguably constitute a violation of the Act.

On the other hand, Federal defendants allege this Court should not at this time rule on the question of the State's discretion to commence arbitration proceedings under section 107d–1(b). In their view, the Secretary, pursuant to section 107(b), must initially determine the validity of the Marine Corps' limitation on the operation of the building 2200 facility independent of any arbitration panel's decision; and that the Secretary's decision is not subject to review by an arbitration panel. Therefore, they contend, since the section 107(b) procedure was not followed in this case[10], the

---

7. Section 107(a) provides as follows:
   For the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, blind persons licensed under the provisions of this Act shall be authorized to operate vending facilities on any Federal property.

8. Section 107d–1(b) provides as follows:
   Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this Act or any regulations issued thereunder (including a limitation of the placement or operation of a vending facility as described in section 1(b) of this Act [20 U.S.C. § 107(b)] and the Secre-

tary's determination thereon) such licensing agency *may file a complaint with the Secretary* who shall convene a panel to arbitrate the dispute pursuant to section 6 of this Act [20 U.S.C. § 107d–2] and the decision of such panel shall be final and binding on the parties except as otherwise provided in this Act. (Emphasis added.)

9. It is undisputed that the Marine Corps did not follow the procedure outlined in section 107(b) which requires that
   [a]ny limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary, who shall determine whether such limitation is justified.

10. See n.9, *infra.*

State could not have requested an arbitration panel under section 107d–1(b); thus, the issue of the State's discretion under the latter section is not ripe for decision. Accordingly, the Federal defendants ask the Court to remand the case to the Secretary for his determination under section 107(b). Federal defendants further state that

> [i]n this case the State agency should not be faulted for failing to specifically request a determination by the Secretary under section 107(b). Section 107(b) does not prescribe any procedure for initiating such a Secretarial decision; and as noted previously, the regulations are silent on this point. Moreover, there is evidence in the record that an officer of the State licensing agency did ask for some guidance on this matter from [the Secretary] in the fall of 1976, and received little response.

Federal Defendant's Memorandum in Support of their Motion for Summary Judgment at p. 36.

The above statement focuses on the heart of this controversy. On the one hand, the licensed blind vendor, the party most directly affected by an adverse action of the Federal agency in control of the facility, does not have a statutory right of action against the Federal agency, in this case the Marine Corps. On the other hand, if the Court followed Federal defendants' or plaintiff's position, the blind vendor would be at the mercy of these parties, because (1) according to the State, it cannot be required to file a complaint against the Federal agency with the Secretary; and (2) according to the Federal defendants, the State cannot file the said complaint absent a Secretarial determination under section 107(b).

As pointed out by Federal defendants and by defendant Nash, the fact remains that in a period of over four years the State agency did not request the Secretary to make a determination under section 107(b) nor did the Secretary initiate such a determination. Thus, defendant Nash had no other avenue of recourse but to file a complaint against the State agency, pursuant to section 107(d)–1(a), to pursue her claim that the Marine Corps was not complying with section 107(b) of the Act.

■ The Court finds that section 107d–1(b) does not in all instances require the Secretary's determination as a prerequisite to the filing of a complaint by a State agency. Here, the State agency could have filed such a complaint asserting the Marine Corps' failure to justify the termination of Nash's facility to the Secretary for his final determination. Logically, it would be impossible for the State ever to bring this issue to arbitration if it has to await the Secretary's determination. Accordingly, the Court holds that an arbitration panel convened under section 107d–1(a) may determine that the State licensing agency should have filed a complaint with the Secretary, under section 107d–1(b), against the federal agency, in this case the Marine Corps.

■ The Court does not read the panel's decision as holding that the State agency has a nondiscretionary duty to file a complaint whenever a licensed blind vendor so requests; neither does the Court find that to be a proper reading of the Act. However, the Court finds the Act to impose an obligation upon the State agency to protect the licensed blind vendor's "priority" granted by the Act. This, in turn, requires the agency to pursue a licensed blind vendor's grievance when his rights are arguably being jeopardized by the Federal agency's actions. Otherwise, the blind vendor has no recourse against a Federal agency's impairment of his "priority" under the Act.

■ After a review of the record, the Court UPHOLDS the panel's finding that the State agency violated section 107d–1(b) in failing to file a complaint with the Secretary.

■ Third, the panel held that the State licensing agency violated section 107a(b) of the Act, 45 C.F.R. 1369.17 and 45 C.F.R. 1364.3(a)(11), by failing to negotiate with the Marine Corps to retain Nash's facility in

building 2200.[11] Panel's Award at pp. 17, 49. Therefore, it directed the State agency to initiate negotiations with the Marine Corps to reopen the facility in building 2200. The Court finds it reasonable for the State to attempt to resolve this dispute through negotiations with the Marine Corps before filing a formal complaint with the Secretary. However, the Court does not agree with the panel's reading of the cited section and regulations; they do not place such a statutory duty upon the State licensing agency. Therefore, the panel's order directing the State agency to begin negotiations with the Marine Corps is VACATED.

■ Fourth, the panel also held that the State licensing agency failed to grant Nash's request for an evidentiary hearing, in violation of section 107d–1(a). *Id.* at pp. 49, 50. It concluded that this delay forced Nash to engage legal counsel and to file suit in this Court to obtain injunctive relief. *Id.* As a result, it assessed against the State licensing agency "all legal fees relating to the costs of seeking a temporary restraining order and injunction including the appeals." *Id.* Even if this Court were to agree with the panel's finding of violation of section 107d–1(a), the Court finds no statutory support for the panel's award of attorney's fees to defendant Nash for her unsuccessful efforts to obtain relief in this Court. Therefore, the panel's assessment of Nash's litigation expenses for her previous action against the State licensing agency is VACATED.

■ Fifth, the panel held that the State licensing agency discriminated against Nash by failing to exercise due diligence in placing her in another facility after her removal from the Marine Corps' facility. *Id.* at pp. 46, 47. It characterized the State's efforts as "desultory" at best. *Id.* Therefore, it directed the State agency to compensate Nash the difference between what she would have earned at the Marine Corps facility and what she earned elsewhere after her removal from the said facility on April 15, 1977. The Court finds that the State licensing agency's failure to file a complaint with the Secretary, in violation of section 107d–1(b), proximately caused defendant Nash's loss of her vending facility at the Marine Corps base. Thus, on this ground, the Court UPHOLDS the panel's award of compensation to defendant Nash, as a reasonable exercise of its powers to decide the dispute between the parties pursuant to section 107d–1(a).

As part of the relief granted, the panel directed Federal defendants to pay defendant Nash's representative before the panel, Mr. James Gashel, one hundred (100) dollars per day, for all reasonable, actual time spent in preparation of and in the arbitration hearing, upon her showing that she was unable to obtain free legal counsel. The panel also directed Federal defendants to pay for various other expenses related to the said hearing. *See Id.* at pp. 51, 52.

■ The Court finds the award of these expenses to be beyond the authority of the panel. Section 107d–2(d) of the Act provides that "[t]he Secretary shall pay all reasonable costs of arbitration ... in accordance with a schedule of fees and expenses he shall publish in the Federal Register." The Court finds that, by specifically directing the Secretary to pay for arbitration expenses in accordance with a schedule of fees, Congress foreclosed any action by an arbitration panel to award arbitration expenses. Furthermore, neither section 107d–1(a), which defines the panel's authority, nor any other section of the Act authorizes the panel to direct a non-party to pay one of the party's arbitration expenses. Accordingly, any expenses assessed against Federal defendants are VACATED.

---

11. Section 107a(b) reads as follows:
    The State licensing agency shall, in issuing such license for the operation of a vending facility, give preference to blind persons who are in need of employment. Each such license shall be issued for an indefinite period but may be terminated by the State licensing agency if it is satisfied that the facility is not being operated in accordance with the rules and regulations prescribed by such licensing agency. Such licenses shall be issued only to applicants who are blind within the meaning of section 107e of this title.

Plaintiffs contend the panel's decision and its award are arbitrary, capricious, characterized by an abuse of discretion and unsupported by substantial evidence on the whole record. The Court finds that, with the exception of those findings and/or portions of the panel's award which are hereby expressly vacated, plaintiffs' argument is without merit.

Defendant Nash has filed a counterclaim seeking, inter alia, (1) monetary damages in the amount of $10,000.00, and (2) attorney's fees for defending this action. Plaintiffs advance that any award of money damages against the State licensing agency would be barred by the Eleventh Amendment. They also contend that there is no statutory authority for an award of attorney's fees against the State in this action.

The Eleventh Amendment has been interpreted to bar Federal court actions against a State by a private party absent its consent. *See e.g. Florida Department of Health and Rehabilitation Services, et al., v. Florida Nursing Home Association, et al.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). A State can be found to have consented to such a suit through a number of ways. In particular, by bringing suit against a private party the State waives its Eleventh Amendment immunity and consents to the court's jurisdiction of certain counterclaims that might be asserted against it. *See* 3 *Moore's Federal Practice* ¶ 13.19[2.–2] and cases cited therein. Nevertheless, the courts have held that

> [t]he waiver is ... limited to a counterclaim asserted defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State.

(Citations omitted.) *Burgess v. M/V Tamano,* 382 F.Supp. 351, 356 n. 6 (D.C.Maine 1974). *See also State of Alaska v. O/S Lynn Kendall,* 310 F.Supp. 433 (D.C.Alaska 1970).

In the case at bar, the State's complaint seeks no monetary damages. Thus, defendant's counterclaim does not defeat or diminish the State's recovery but would constitute an affirmative judgment against the State. Accordingly, defendant Nash's claim for money damages is DENIED as barred by the Eleventh Amendment.

Defendant Nash seeks attorney's fees for defending this action, asserting that plaintiffs' non-compliance with the panel's decision, coupled with their failure to seek a stay of that decision, pending review in this Court, allegedly in violation of 5 U.S.C. § 705, entitles her to attorney's fees. Plaintiffs respond that there is no statutory basis for an award of attorney's fees in this case. The Court DEFERS ruling on this issue at this time and ORDERS the parties to file additional briefs addressing this issue as follows: (1) defendant Nash is ORDERED to file a brief within ten (10) days of the date of this order; (2) plaintiffs shall have twenty (20) days to respond if they so desire.

All arguments not specifically addressed in this order are found to be without merit.

In sum, all motions before the Court are GRANTED IN PART and DENIED IN PART as follows: (1) The State licensing agency is ORDERED to file a complaint with the Secretary, pursuant to 20 U.S.C. § 107d–1(b), to seek a determination as to whether the Marine Corps' termination of defendant Nash's facility was in compliance with the Act, within thirty (30) days of the date of this order, subject to the State's right to secure the said facility for defendant Nash within the thirty day period by other means such as direct negotiations with the Marine Corps; (2) if this facility is reopened through direct negotiations, it shall be operated by defendant Nash, with no contingencies except as otherwise provided in the Act; (3) the panel's award of relief at ¶¶ 4, 5, 7, and 10 are AFFIRMED in their entirety; (4) the panel's award of relief at ¶¶ 1, 2, and 3 are REVERSED except as provided herein; (5) the panel's award of relief at ¶¶ 6, 8, and 9 are REVERSED in their entirety; (6) defendant Nash's counterclaim for monetary damages is DENIED; (7) the Court DEFERS ruling on defendant Nash's request for attorney's

fees. Defendant Nash is ORDERED to file a brief addressing the issue of attorney's fees within ten (10) days of the date of this order. Plaintiffs shall have twenty (20) days from the date of this order to respond. The Clerk is DIRECTED to resubmit this file after the parties have filed their respective briefs. The Court shall retain jurisdiction over this matter to resolve any disputes among the parties regarding compliance with this order, which cannot be resolved by the arbitration panel as provided in ¶ 10 of the panel's award of relief.