STATE OF OKLAHOMA, ex rel.,
DEPARTMENT OF HUMAN
SERVICES, Plaintiff,

v.

Casper WEINBERGER, as Secretary of
the United States Department of
Defense, Defendant.

No. CIV–81–928–T.

United States District Court,
W.D. Oklahoma.

Dec. 22, 1982.

Russell D. Hall, Dept. of Human Services, Oklahoma City, Okl., for plaintiff.

David L. Russell, U.S. Atty., Oklahoma City, Okl., Bernard Marcak, Dept. of the Air Force, Randolph AFB, Tex., Charles G. Symmonds, Associate General Counsel, Army and Air Force Exchange Service, Dallas, Tex., for defendant.

MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

The Randolph-Sheppard Act, 20 U.S.C. §§ 107–107f, authorizes the operation of vending facilities on any federal property by blind persons. The act, which was amended in 1954 and 1974, has the purposes of "providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). Dissatisfaction with the limited expansion of the blind vendor program since its 1936 enactment, that stemmed at least partially from the competition of automatic vending machines and opposition of employees and officials to the blind vendor program, resulted in the enactment of the 1974 amendments. This legislation designates the Department of Health, Education, and Welfare [1] (HEW) (now the Department of Education) as the principal agency for carrying out the act's provisions and authorizes the Secretary of HEW to issue implementing rules and regulations. The amendments give licensed blind persons a priority in the operation of vending facilities and provide that income from vending machines on federal property be shared in specified percentages with blind vendors or state blind vendor licensing agencies, depending on the degree the machines compete with the blind vendors. Certain vending machines are, however, excepted by 20 U.S.C. § 107d–3(d) from the

---

1. The Department will be referred to by its    original title for purposes of this order.

income-sharing requirements. This exception forms the basis of this suit, brought by the Department of Human Services of the State of Oklahoma, the state licensing agency designated by HEW to implement the Randolph-Sheppard Act in Oklahoma, against the Secretary of Defense.[2]

The disputed exception provides:

"Income from vending machines in certain locations excepted

(d) Subsections (a) and (b)(1) of this section shall not apply to income from *vending machines within retail sales outlets under the control of exchange or ships' store systems* authorized by Title 10, or to income from vending machines operated by the Veterans Canteen Service, or to income from vending machines not in direct competition with a blind vending facility at individual locations, installations, or facilities on Federal property the total of which at such individual locations, installations, or facilities does not exceed $3,000 annually. (Emphasis added).

HEW, the General Accounting Office and the plaintiff interpret this exception as only excluding income from military exchange-operated vending machines physically located within a retail exchange store.[3] The Department of Defense (DoD) has taken the position and issued a regulation, 32 C.F.R. § 260.3(i)(3)(i), specifying that section 107d–3(d) excludes all income from vending machines under the control of military exchanges or a part of the exchanges' retail outlet system, regardless of their location, from the income-sharing requirements of the Randolph-Sheppard Act. Based on this regulation, DoD installations in Oklahoma have refused to make income-sharing payments to the plaintiff, resulting in the institution of this action to obtain a declaration that the DoD regulation is void,

an injunction against its continued enforcement and a writ of mandamus compelling the Secretary of Defense to replace the contested regulation, prepare an accounting of vending machine income due, and pay future income as it accrues.

Both plaintiff and defendant have filed Motions for Summary Judgment. Neither party contends that a genuine issue as to any material fact exists and, as none is present, summary judgment is appropriate. Fed.R.Civ.P. 56; *Mustang Fuel Corp. v. Youngstown Sheet & Tube,* 561 F.2d 202 (10th Cir.1977). The Court concludes, having reviewed the authorities relied upon by the parties, the briefs, and the numerous exhibits and documentary evidence submitted, that the regulation issued by the defendant is not contrary to the exception, 20 U.S.C. § 107d–3(d), and therefore the motion of the defendant should be granted. The reasons for the decision follow a brief summation of the parties' contentions.

The arguments advanced by the plaintiff in support of its motion for summary judgment may be briefly stated as, the defendant's regulation is contrary to the plain meaning of the exemption and the regulation of HEW, which is authorized to promulgate regulations and administer the Act on a federal level, should be accorded deference and govern. In support of its regulation DoD contends that the language of the exemption is unclear and that its interpretation not only is the most reasonable, but reflects Congressional intent and effectuates the exemption's purpose.

The Supreme Court has stated that the "starting point in every case involving construction of a statute is the language itself." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976). Following the literal meaning of the words would, in this case,

**2.** The Randolph-Sheppard Act provides for arbitration of a state licensing agency's complaint regarding a federal department or agency's failure to comply with the provisions of the act or any regulations issued pursuant to it. Plaintiff filed an arbitration complaint more than a year ago with the Department of Education but has not obtained a decision and does not anticipate one will be rendered due to the recalcitrance of

the Department of Defense. The defendant has not objected to the Court's consideration of this issue and accordingly, under these circumstances, plaintiff will not be required to exhaust its administrative remedies.

**3.** See 45 C.F.R. § 1369.32(i).

compel concurrence with the plaintiff's position as "vending machines within retail sales outlets" would appear to refer to machines within an exchange store. However, when interpreting the words of a statute a court has "some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute..." *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978).

Rejection of the "plain meaning" of the exemption is required because the literal words conflict rather than comport with the purpose of the statute and are inconsistent with evidenced congressional intent. Furthermore, as argued by the defendant, varying HEW interpretations of the exemption that evolved during the consultations the department conducted with DoD prior to publishing its regulations indicate that, contrary to plaintiff's assertions, the statutory language is not without some ambiguity. The differing interpretations are documented by defendant's Exhibit IV and reflect a change in HEW's position from specifically providing in an initial draft regulation for a broad exemption of income from vending machines under the control of post exchange or ships' stores systems or to Department of Defense morale, welfare and recreation activities, and income from Department of Defense clubs, messes, civilian restaurant and welfare funds (March 20, 1975 HEW draft regulation) to the final regulation, 45 C.F.R. § 1369.32(i) that simply exempts income from vending machines within operated retail sales outlets under the control of post exchange or ships' stores systems.

Another indication that the language is imprecise is reflected in HEW's addition of the terms "operated" and "post" to the statutory language in its regulation. Assuming ambiguity exists, these additions and HEW's final interpretation normally would control because when a statute is ambiguous deference is afforded to a *reasonable* interpretation given it by the agency charged with its administration. *Rocky Mountain Oil and Gas Association v. Watt,* 696 F.2d 734 (10th Cir.1982). However, the conflict between HEW's interpretation and the statute's legislative history precludes adopting that administrative agency's position.

One of Congress' purposes in enacting the legislation was to remedy the diversion of what should have been blind income from vending machines to (nonmilitary) employee recreation and welfare groups. The Comptroller General had, since 1949, objected to the retention of profits from resale operations by employee associations on the ground that the funds were required to be deposited in the United States Treasury. Defendant's Exhibit VIII, Comptroller General's Report to Congress, August 10, 1949; defendant's Exhibit IX, a 1952 decision of the Comptroller General that the use of proceeds received from vending machines in FBI offices by employees for recreational and other purposes was improper and the funds received were required to be deposited into the Treasury as miscellaneous receipts; defendant's Exhibit X, a similar decision issued in 1952 regarding proceeds received from vending machines in post offices.[4] However, in his 1949 report to Congress the Comptroller General recognized that post exchange profits were not required to be deposited to the credit of the United States but could be used for the welfare of military personnel. Various Congressional references to and discussions of the 1949 Report and the two Comptroller General decisions regarding vending machine income (e.g. defendant's Exhibits VII and XI) that occurred during hearings and in reports regarding the amendments substantiate the conclusion that Congress intended by the legislation to promote the blind vendor program by affecting the re-

---

**4.** The Comptroller General stated in this decision that it would interpose no objection to the continued use of proceeds derived by employee groups for employee general welfare activities pending action by Congress clarifying the proper use of the funds as recommended in his August 1949 report to Congress.

tention of vending machine income by *non-military* employee groups, such as the postal workers union.

Other indications of Congressional intent[5] are found in Senate Report 93–937, defendant's Exhibit XV, one of several that accompanied the Randolph-Sheppard Act Amendments of 1974. The report states that substantive amendments were made in the Senate bill (that was proposed to amend the Randolph-Sheppard Act for the Blind), which included:

"8. Substituted a new section 7 of the Act which ... excludes certain activities and installations from application of the section;" p. 2

"Subsection (d) provides that the assignment of income provisions of subsections (a) and (b)(1) do not apply to vending machine income from military exchange retail outlets..." p. 21

"Subsection (d) exempts certain activities from vending machine income assignment. Both military exchange systems and the Veterans Canteen Service operate under specific statutory authority, and are thus, as a matter of policy, excluded..." p. 24

"Subsection (d) excludes from application of this section vending machine income from retail outlets of military exchanges." p. 30

The most persuasive evidence of Congressional intent is found in the following colloquy between Congressmen Brademas and Sikes during house floor debate on the amendments:

"Mr. SIKES. Mr. Speaker, first let me congratulate my distinguished friend, the gentleman from Indiana (Mr. Brademas), and his committee for an important legislative accomplishment. This is a good bill and a needed bill.

Mr. Speaker, I do seek clarification on one point. I have discussed this with the distinguished gentleman, and let me ask a question.

"In section 7(d) of the amended act (section 206 of H.R.14225), there is a statement that the income-sharing provisions as they pertain to vending machines 'within the retail sales outlets under the control of exchange or ship's store's systems authorized by title 10,' shall not apply. I would presume, and I would like the distinguished subcommittee chairman to verify for the record, that this provision *exempts from the revenue-sharing plan all those vending machines which are operated by the military post exchanges,* Navy exchanges, officer and enlisted messes, and so forth. As you are aware, the profits from these vending machines are utilized by the services to finance such worthwhile endeavors as the base libraries, the youth activities, the gymnasium, and other sports activities, hobby shops and motion picture programs, ashore and afloat. The servicemen finance these programs themselves through the revenues collected in the retail sales outlet systems as I have mentioned. To require that these revenues be shared might well necessitate the appropriation of additional funds for the defense budget. Since work in the fiscal year 1975 defense appropriations bill has been completed, the effect would be to cut off these needed programs without support.

Would the gentleman confirm for me the fact that it is the intent that this paragraph *shall not apply to the military services,* and that this is in keeping with the language on page 24 of the Senate report (S.Rep. No. 93–937) which is more specific on this issue that[n] is the conference report?

Mr. BRADEMAS. Mr. Speaker, I thank the gentleman from Florida for his fine remarks about this legislation. I am pleased to tell the gentleman that the answer to both his questions is 'Yes.' " Congressional Record—House, October 16, 1974, H 10604. (Emphasis added).

---

5. See also post-passage correspondence between HEW Secretary David Mathews and Congressman Sikes and between Congressman Brademas and Congressman Sikes. Defendant's Exhibits XVII and XVIII.

The discussion establishes that the interpretation given the exception by the defendant and adopted by the Court, which exempts income from all vending machines that are a part of the retail outlet system under the control of the military exchanges, is in accord with Congressional intent. This interpretation also effects the evident purpose of the exception—to provide continued support for the military exchanges. To adopt plaintiff's interpretation would render the exemption meaningless because the few machines that are physically located within the exchange retail stores generate only insignificant income and thus would normally be covered by the general $3,000 exemption.

In summation, the Court concludes that the regulation of the Department of Defense is consistent with the statutory language, the purpose of the exception, and Congressional intent and thus is not void. Accordingly, defendant's Motion for Summary Judgment shall be and is hereby granted and plaintiff's Motion for Summary Judgment shall be and is hereby denied.