The **STATE OF NEW YORK, Cesar A. Perales, as Commissioner of the New York State Department of Social Services, New York State Commission for the Blind and Visually Handicapped, Gary Serrapica, Chester Smalley and Murray Dimon, Plaintiffs,**

**v.**

**UNITED STATES POSTAL SERVICE and Albert Casey, Postmaster General of the United States, Defendants.**

**No. 86 Civ. 2853 (JMC).**

United States District Court, S.D. New York.

Aug. 1, 1988.

Robert Abrams, Atty. Gen., Judith Kaufman, Asst. Atty. Gen., New York City, for State plaintiffs.

Leslie Salzman, New York Lawyers for the Public Interest, New York City, for individual plaintiffs Serrapica, Smalley and Dimon.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., Paula T. Dow, Asst. U.S. Atty., New York City, J. Fred Eggleston, Asst. Gen. Counsel, Chris Klepac, Atty., Legislative Div., U.S. Postal Service, Washington, D.C., for defendants.

CANNELLA, District Judge:

Defendants' motion for judgment on the pleadings is denied. Fed.R.Civ.P. 12(c). The action is stayed pending exhaustion of applicable administrative remedies.

## BACKGROUND

This action for declaratory and injunctive relief has been brought by The State of New York, Cesar Perales, in his capacity as Commissioner of the New York State Department of Social Services, the New York State Commission for the Blind and Visually Handicapped ["CBVH"], and Gary Serrapica, Chester Smalley and Murray Dimon, individual blind vendors, to challenge certain policies and practices of defendants United States Postal Service [the "Postal Service"] and the Postmaster General of the United States. The complaint alleges widespread and systemic violations of the Randolph–Sheppard Act, 20 U.S.C. §§ 107–107e [the "Act"] and violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The complaint states two claims for relief. In their first claim, plaintiffs allege that defendants are violating the Act by (1) failing to establish vending facilities for blind vendors wherever feasible on Postal Service properties; (2) failing to grant blind vendors priority in operating vending facilities on these properties; and (3) improperly denying vending machine income to blind vendors and the CBVH. In their second claim, plaintiffs allege that defendants are engaging in a pattern and practice of giving less desirable facilities to blind vendors than those given to private contractors, in violation of section 504 of the Rehabilitation Act of 1973. Plaintiff CBVH is the bureau of the New York State Department of Social Services designated as the State licensing agency under the Act. As such, CBVH operates New York State's vending program for blind individuals. It obtains the necessary permits to operate facilities on federal property and trains and licenses blind individuals to operate the facilities.

## DISCUSSION

### A. *The Statutory Scheme*

The Randolph–Sheppard Act was first enacted in 1936 and was designed to provide employment opportunities to blind vendors operating on federal property. The Act was amended in 1954 and 1974. Under the Act, the Secretary of Education has the responsibility to promulgate regulations designed to implement the Act. 20 U.S.C. § 107(b). For example, the Secretary is

directed to prescribe regulations ensuring that:

> (1) priority ... is given to ... licensed blind persons ..., and
>
> (2) wherever feasible, one or more [blind] vending facilities are established on all Federal property to the extent that any such facility or facilities would not adversely affect the interests of the United States.

*Id.* § 107(b)(1), (2). The Act also provides for the accrual to the State agency of income "obtained from the operation of vending machines on Federal property" where there is no blind licensee operating on the property. *Id.* § 107d–3(a).

Under the statutory scheme the Secretary designates state licensing agencies, such as the CBVH, which proceed to license blind vendors. *Id.* § 107a(a)(5); 34 C.F.R. § 395.7. The state licensing agencies then apply to various federal agencies for permits allowing them to establish sites for the blind vendors on federal property. *Id.* § 107a(c); 34 C.F.R. §§ 395.16, 395.35. When a dispute arises, the Act provides that:

> (a) Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d–3 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided for in this chapter.

> (b) Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d–2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

*Id.* §§ 107d–1(a), (b). Section 107d–2(a) of the Act provides:

> Upon receipt of a complaint filed under section 107d–1 of this title, the Secretary shall convene an ad hoc arbitration panel as provided in subsection (b) of this section. Such panel shall, in accordance with the provisions of subchapter II of chapter 5 of Title 5, give notice, conduct a hearing, and render its decision which shall be subject to appeal and review as a final agency action for purposes of chapter 7 of such Title 5.

*Id.* § 107d–2(a).

**B. *Exhaustion Under the Randolph–Sheppard Act***

■ Defendants do not challenge the merits of plaintiffs' claims. Instead, they argue that the action must be dismissed because plaintiffs have failed to resort to the administrative remedies provided for in the Act.[1] Plaintiffs oppose defendants' motion essentially on the grounds that resort to administrative remedies is not man-

---

**1.** Defendants have moved pursuant to Fed.R. Civ.P. 12(c) for judgment on the pleadings, or in the alternative, for summary judgment. The issue raised in the motion goes to the question of exhaustion. Because the fact that plaintiffs have not resorted to the administrative process is undisputed, and in any event is pleaded as an affirmative defense in defendants' answer, there is no need to go beyond the pleadings. Accordingly, the motion is treated pursuant to Fed.R.

Civ.P. 12(c). Although plaintiffs have submitted the affidavit of Thomas R. Robertson, Chief of Technical Rehabilitation Services for the Blind for the CBVH, it has not been considered. To the extent that plaintiffs' arguments in opposition to defendants' motion rests on allegations of widespread and systemic abuses of the Act, such allegations are sufficiently pleaded in the complaint for them to be considered by the Court.

datory under the Act and, given the circumstances, arbitration is not an adequate remedy. Thus, the issue presented is squarely one of whether the Act requires plaintiffs to seek administrative relief prior to commencing an action in federal court.

Defendants point to several cases which support their position, although none emanate from this circuit. In Randolph–Sheppard Vendors of *America v. Weinberger*, 795 F.2d 90 (D.C.Cir.1986), organizations representing blind vendors challenged two contracts awarded by the Secretary of Defense on the ground that they were not made in accordance with the Act. Reaching the merits, the district court granted summary judgment in favor of the defendants. On appeal, the decision was vacated on the ground that plaintiffs had failed to exhaust their administrative remedies. *Id.* at 111.

In a thorough and exhaustive opinion, the court of appeals held that "[t]he Act ... establishes a clear and explicit system for resolution of disputes arising under the Act." *Id.* at 102. In noting that the arbitration provisions were added as part of the 1974 amendments to the Act, the court quoted a Senate Report which declared that "[i]t is the expectation of the Committee [reviewing the amendments] that the arbitration and review procedures adopted ... will provide the means by which aggrieved vendors and State agencies may obtain final and satisfactory resolution of disputes." *Id.* (quoting S.Rep. No. 937, 93d Cong., 2d Sess. 20 (1974)).

The *Weinberger* court was particularly impressed by the fact that the dispute resolution system embodied in the 1974 amendments "parallels the tiers of authority established by the Act." *Id.* Under the Act, a blind vendor must first apply to a state agency for a license and then the state agency applies to the federal agency for placement of the licensee. Likewise when a dispute arises, "a blind licensee must first apply to the state licensing authority before filing a complaint with the Secretary." *Id.* at 102–03.

Further support for the argument that Congress intended blind vendors and state licensing agencies to resort first to available administrative remedies can be gleaned from the scope of judicial review established by the 1974 amendments. Under 20 U.S.C. § 107d–2, the arbitration decision "shall be subject to appeal and review as a final agency action." Such judicial review is "severely circumscribed" and "requir[es] a reviewing court to determine whether a decision is within the ambit of the agency's discretion and supported by the record." *Weinberger*, 795 F.2d at 103 (citing cases). The court's reasoning is persuasive:

> It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek [a] *de novo* determination in federal court. ... Congress ... set up an arbitration scheme instead of authorizing resort to federal court. As Justice Brandeis stated the "well settled" rule: "where a statute creates a right and provides a special remedy, that remedy is exclusive." *United States v. Babcock*, 250 U.S. 328, 331 [39 S.Ct. 464, 63 L.Ed. 1011] ... (1919) (citations omitted). Thus, where Congress has created an arbitration scheme as the administrative method for enforcing a statutory right, there is a strong presumption that it is exclusive.

*Id.* at 103. Under the above reasoning, plaintiffs' main argument, that the Act allows parties to seek administrative remedies but does not require it, is less than compelling. *See also id.* at 102 n. 19.

Other courts have also found that the Act makes arbitration of disputes mandatory. *Fillinger v. Cleveland Society for the Blind*, 587 F.2d 336 (6th Cir.1978), involved claims by blind vendors against a society for the blind and a state commission alleging abuses in the operation of the blind vendor program in Cleveland. The court held that the vendors had first to exhaust their administrative remedies before continuing with their federal court action:

Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances. Rather congressional policy as reflected in the 1974 amendments is that blind vendors must exhaust their administrative and arbitration remedies before seeking review in the district courts.

*Id.* at 338.

In *Massachusetts Elected Committee of Blind Vendors v. Matava*, 482 F.Supp. 1186 (D.Mass.1980), the court was also faced with a challenge by dissatisfied blind vendor groups against "systemic abuses" of the Act by the state agency. Finding the conclusion reached in *Fillinger* to be "a sound one," it also held that plaintiffs had to exhaust their administrative remedies before proceeding in federal court. *See id.* at 1189. The court found:

> sufficient ... indications to convince me that [plaintiffs] must first invoke the administrative and arbitration remedies before seeking judicial review. First, the claims [of systemic abuse] are fairly encompassed by the language of the review statute. Second, I am impressed by the obvious congressional preference that disputes under the ... Act be resolved through administrative rather than judicial proceedings. Finally, I note that the structure of the arbitration panel [provided for under the Act], consisting as it does of [ ] one member each from the Commission and from the blind vendors in addition to a neutral member, is well suited to resolving the present dispute.

*Id.* at 1189. In the instant case, plaintiffs also allege systemic and widespread abuse of the Act in Postal Service facilities throughout the state. Like the court in *Matava*, this court is satisfied that these allegations "are fairly encompassed by the broad language," *id.*, of 20 U.S.C. § 107d–1(a), which allows any blind vendor "dissatisfied with any action arising from the operation or administration of the vendor facility program," *id.*, to seek administrative relief.

Plaintiffs argue that *Fillinger* and *Matava* are distinguishable because they involved suits brought by blind vendors directly against state licensing agencies. The Court is unpersuaded. In the instant case, individual blind vendors have joined with the state licensing agency to challenge a federal agency's operation of the Act's vendor program. It is not at all clear, as suggested by plaintiffs, that the 1974 amendments were intended only to create a dispute resolution mechanism for disputes (1) between the blind vendor and the state licensing agency and (2) between the state licensing agency and the federal agency operating the property. By the terms of the Act itself, individual vendors are required to be licensed by, and present "any" complaints to the state licensing agency. If the dispute stems from the actions of the federal agency involved, rather than from those of the state agency, it would appear incumbent upon the state agency to initiate administrative proceedings on behalf of the vendors directly against the federal agency. *See* 20 U.S.C. § 107d–1(b). This was precisely the conclusion reached in *Georgia Dept. of Human Resources v. Bell*, 528 F.Supp. 17 (N.D.Ga.1981), an action wherein plaintiff sought review of an arbitration panel's decision under the Act. In *Bell*, the court held that the Act

> impose[s] an obligation upon the State agency to protect the licensed vendor's [rights] granted by the Act. This, in turn, requires the agency to pursue a licensed vendor's grievance when his rights are arguably being jeopardized by the Federal agency's actions. Otherwise, the blind vendor has no recourse against a Federal agency's impairment of his [rights] under the Act.

*Id.* at 24; *see also Weinberger*, 795 F.2d at 102–03 ("[U]nder the dispute resolution scheme, a blind licensee must first apply to the state licensing agency [for resolution of his grievances].... [The] state licensing agency has direct resort to the Secretary under the dispute resolution system."). Thus, the fact that sections 107d–1(a) and (b) do not provide a direct administrative mechanism for the resolution of claims pressed by individual vendors against the

federal agency involved does not establish that Congress intended to allow these vendors to circumvent the Act's arbitration scheme and proceed directly to federal court.

The Court agrees with defendants that the two cases cited by plaintiffs in support of their position are simply not persuasive enough authority to overcome the reasoning and holdings found in *Weinberger, Fillinger* and *Matava.* In *Texas State Commission for the Blind v. United States*, 6 Cl.Ct. 730, 735 n. 12 (Ct.Cl.1984), *rev'd on other grounds*, 796 F.2d 400 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987), the Court of Claims found in a footnote that "[a]rbitration under the Randolph–Sheppard Act is voluntary." In that case, the question of exhaustion does not appear to have been directly at issue. Thus, the *Texas Commission* court's comment was dicta and, like the court in *Weinberger*, 795 F.2d at 104 n. 21, this Court declines to follow its reasoning.

The second case, and one relied upon in *Texas Commission*, is the case of *Oklahoma ex rel. Department of Human Services v. Weinberger*, 582 F.Supp. 293 (W.D. Okla.1982), *aff'd*, 741 F.2d 290 (10th Cir. 1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984). Likewise in that case, the question of exhaustion was not directly at issue. The court acknowledged that the Act provides for arbitration of a state licensing agency's complaint against a federal agency and that the state agency had filed such a complaint more than one year earlier, but had not yet obtained a decision. In a footnote, the court concluded that, because "[t]he defendant has not objected to the Court's consideration of this issue ... plaintiff will not be required to exhaust its administrative remedies." 582 F.Supp. at 294 n. 2. It would appear from this statement that, had the defendant objected on the ground that the Act requires exhaustion of administrative remedies, the court might well have refused to adjudicate the dispute. It is little

wonder, therefore, that the court in *Weinberger* found that the *Oklahoma* decision provided "only dubious support" for the *Texas Commission* court's conclusion regarding the permissive nature of the Act's arbitration provisions. *See* 795 F.2d at 104 n. 21.

The Court also rejects plaintiffs' contention that exhaustion should not be required because arbitration is an ineffective method of correcting widespread and systemic abuses under the Act. First of all, both the *Fillinger* and *Matava* cases involved allegations of systemic abuse, albeit directed at the state licensing agency. It is true that *Weinberger* involved two contracts, as opposed to widespread abuse. Those two contracts, however, involved awards to the Burger King Corporation and the Mc-Donald's Corporation for the construction and operation of fast-food restaurants on Army, Air Force and Naval bases. *See* 795 F.2d at 92. Presumably, dispute resolution on these contracts involved no small amount of detail, given the obviously large number of military bases throughout the country. The perceived complexity of the dispute, therefore, should not act as an automatic bar to administrative adjudication. There are a finite number of Postal Service properties located in New York State and a finite number of policies and practices challenged by plaintiffs. The Court is not convinced that resort to the Act's administrative procedures would be so futile as to effectively deny plaintiffs an adequate remedy. For the foregoing reasons, therefore, the Court concludes that plaintiffs must first exhaust their administrative remedies before continuing with this action. Accordingly, the action is stayed pending exhaustion of these remedies.[2]

C. *Plaintiffs' Claim Under the Rehabilitation Act*

Defendants also move for the dismissal of plaintiffs' claim for relief made pursuant to section 504 of the Rehabilita-

---

2. In both *Fillinger* and *Matava,* the court ordered the actions stayed pending exhaustion of administrative remedies under the Act. *Filling-* er, 587 F.2d at 338; *Matava,* 482 F.Supp. at 1189.

tion Act of 1973, 29 U.S.C. § 794 ["section 504"]. Section 504 provides, in relevant part, that:

> No otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of his handicap, ... be denied the benefits of, or be subjected to discrimination under any program or activity conducted by ... the United States Postal Service.

*Id.* Plaintiffs argue that because their section 504 claim is subject to the administrative remedies found in Title VI of the Civil Rights Act of 1964, not Title VII as suggested by defendants, they are not required to exhaust administrative remedies prior to bringing their Rehabilitation Act claim in federal court.

Plaintiffs correctly point out that, pursuant to section 505(a) of the Rehabilitation Act, 29 U.S.C. § 794a, the rights, remedies and procedures of Title VI are applicable to claims brought under section 504. It is also true that a number of cases have held that exhaustion of Title VI administrative remedies is not a prerequisite to judicial review of a claim under section 504. *See, e.g., Kling v. County of Los Angeles,* 633 F.2d 876, 879 (9th Cir.1980) (relying upon *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *Camenisch v. University of Texas,* 616 F.2d 127, 135 (5th Cir.1980), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Defendants, in fact, do not even respond to these arguments in their reply memorandum. Instead, they relied in their moving papers on the cases of *Boyd v. United States Postal Service,* 752 F.2d 410 (9th Cir.1985) and *McGuinness v. United States Postal Service,* 744 F.2d 1318 (7th Cir.1984).

*Boyd* involved a former employee of the Postal Service and *McGuinness* involved a unsuccessful job applicant. Both plaintiffs advanced claims of discrimination pursuant to sections 501 and 504 of the Rehabilitation Act. In both cases, the court essentially held that, given the specific remedies provided in section 501 for discrimination in employment on the basis of handicap, that section was the exclusive remedy for the

plaintiffs. *Boyd,* 752 F.2d at 413; *McGuinness,* 744 F.2d at 1321. Plaintiffs argue that *Boyd* and *McGuinness* may be distinguished on the grounds that (1) each involved a plaintiff pleading the same claim against the same employer as a violation of either section 501 or section 504, and (2) in this case, plaintiffs are neither employees of, nor applicants for employment with the Postal Service. The Court cannot agree that *Boyd* and *McGuinness* shed no light on this subject. In this case, plaintiffs have asserted one claim under the substantive provisions of the Act and seek essentially the same relief under a second claim brought pursuant to section 504. Under these circumstances, the *Boyd* and *McGuinness* courts' rulings that section 501 provided plaintiffs with an exclusive basis for relief, at least insofar as they were required to exhaust its administrative remedies before proceeding with their federal action, are applicable to the instant case. Even more compelling to the Court, despite the fact that neither side discussed the case, is the Supreme Court's holding in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). *Robinson* involved an essentially analogous pleading situation to that presented here, and the Court is hard pressed to find a reason why it does not control this matter.

In *Robinson,* the parents of a handicapped child brought administrative proceedings against and ultimately sued the child's school committee after the committee decided it would no longer fund the child's placement in a special education program. The parents asserted claims under, *inter alia,* the Education of the Handicapped Act (EHA), 20 U.S.C. § 1400 *et seq.* and section 504. In analysis highly relevant to the instant case, the Court concluded that, by enacting the EHA as "a comprehensive scheme designed ... as the most effective way to protect the right of a handicapped child to a free appropriate public education.... Congress did not intend to have the EHA scheme circumvented by resort to the more general provisions of ... § 504." 468 U.S. at 1016, 104 S.Ct. at 3470. The Court went on to note that:

> [e]ven assuming that the reach of § 504 is coextensive with that of the EHA,

there is no doubt that the remedies, rights, and procedures Congress set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general antidiscrimination provision of § 504.

*Id.* at 1019, 104 S.Ct. at 3472. Specifically, the Court held that where "whatever remedy might be provided under § 504 is provided with more clarity and precision under the EHA, a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504." *Id.* at 1021, 104 S.Ct. at 3473.

A similar analysis can easily be applied to the instant case. The Act was designed as a comprehensive scheme allowing for the operation of vending facilities on federal properties, "[f]or the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). As discussed above, by enacting the arbitration provisions found in §§ 107d–1(a) and (b), Congress clearly intended to establish a complementary scheme whereby disputes over the substantive rights contained in the Act could be resolved. As in *Robinson*, the Act, and not section 504, was designed to address the specific concerns underlying plaintiffs' complaint. Here also, even assuming plaintiffs could obtain the same relief under section 504 as they could by resorting to the Act's arbitration procedures, it is clear that Congress intended the latter to be the principal device through which plaintiffs could present their grievances. Were this not the case, the simple "pleading trick" of adding a section 504 claim to a complaint alleging violations of the Act, *see* 468 U.S. at 1005, 104 S.Ct. at 3464, would allow plaintiffs to evade the exhaustion requirements specified in the Act and proceed directly to federal court, thereby frustrating Congress's intent.

Plaintiffs' second claim for relief is a mere two paragraphs in length, and provides one example to support its allegation that defendants "engage in a pattern and practice of giving less desirable facilities to blind vendors than those given private contractors." Complaint ¶ 29. There is little doubt that, given the broad sweep of the Act's substantive provisions, these claimed deficiencies fall within the Act's remedial scope and would, therefore, be subject to adjudication under its arbitration provisions. It cannot seriously be argued that plaintiffs must either be allowed to press ahead with their section 504 claim, or risk being subjected to unlawful discrimination on account of their status as blind vendors when the very discriminatory acts alleged are subject to attack under the Act.

Because there is little, if anything, in the way of relief which plaintiffs may obtain under section 504 that they may not also obtain under the more specific provisions of the Act, the "presumption ... should be that [plaintiffs are] required to exhaust [the Act's administrative] remedies, unless doing so would be futile." *Id.* at 1019 n. 22, 104 S.Ct. at 3472 n. 22; *see also Smith v. United States Postal Service*, 742 F.2d 257, 261–62 (6th Cir.1984). Plaintiffs have no basis to claim that resort to the administrative process in an effort to obtain vending facilities equal to those afforded private contractors would be "futile." Thus, plaintiffs must first exhaust their administrative remedies with respect to their claim for relief under the Act before proceeding with this action. For all of the foregoing reasons, therefore, the entire action is stayed pending exhaustion of applicable administrative remedies found at 20 U.S.C. §§ 107d–1(a), (b).

## CONCLUSION

Defedants' motion for judgment on the pleadings is denied. Fed.R.Civ.P. 12(c). The entire action is stayed pending exhaustion of applicable administrative remedies.

SO ORDERED.