PACIFIC SUPPLY COOPERATIVE, et al., Plaintiffs-Appellants,

v.

SHELL OIL COMPANY,
Defendant-Appellee.

No. 9–66.

Temporary Emergency Court of Appeals.

Argued Oct. 14, 1982.

Decided Dec. 7, 1982.

Jess M. Glaeser, Portland, Or., with whom John R. Gilbertson, David J. Sweeney of Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland, Or., were on the brief for plaintiffs-appellants.

William N. Mehlhaf, Portland, Or., with whom John D. Burns, Portland, Or. and William G. Riddoch, C.D. Walz, Jr., Houston, Tex., were on the brief for defendant-appellee.

Before GRANT, PECK and MAXWELL, Judges.

JOHN W. PECK, Judge.

The principal issue Pacific Supply Cooperative (Pacific) raises in its appeal of the entry of orders of summary judgment for

Shell Oil Company (Shell) is whether Shell violated the Mandatory Petroleum Price Regulations, 10 C.F.R. pt. 212, promulgated pursuant to the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. §§ 751 *et seq.*, by not placing Pacific in a "class of purchaser" of which Pacific would be the sole member. Pacific also raises as issues whether there exists a genuine issue of material fact concerning Shell's alleged violation of Special Rule No. 1, Appendix to Subpart K of 6 C.F.R. pt. 130, and whether the district court abused its discretion in refusing to open discovery, and granting summary judgment for Shell, on the issue of cost pass-throughs. Because we find that the district judge properly resolved each of these issues, we affirm.

On April 1, 1971, Shell, a petroleum products refiner and distributor, entered into a one-year supply contract with Pacific, an agricultural cooperative engaged in the business of selling petroleum and agricultural products to its members. A second one-year supply agreement was entered into in 1972. The prices established under this fixed-price contract were:

| | Vancouver, Wash. | Eugene, Or. | Albany, Or. |
|---|---|---|---|
| Premium Gasoline | $ .132 | $ .1400 | $ .1379 |
| Regular Gasoline | .108 | .1160 | .1139 |
| Diesel Fuel (No. 2) | .099 | .1095 | .1074 |
| Stove Oil | — | .1250 | .1229 |

During the contract period Pacific purchased from Shell almost exclusively from Shell's Eugene and Albany terminals. The prices in both the 1971 and the 1972 contracts contained a discount from the regular job listing for Shell products. Shell declined to renew the 1972 contract so that the contractual relationship between Pacific and Shell terminated on March 31, 1973.

From 1971 until 1973 Shell also sold petroleum to Farmers Union Central Exchange, Inc. (CENEX), which, like Pacific, was an agricultural cooperative that supplied petroleum products to its members. On April 6, 1973 Shell and CENEX renewed a variable-price supply contract that was effective until December 31, 1973. The contract provided that the prices in effect on April 1, 1973 at the Eugene terminal were:

| | Eugene, Or. |
|---|---|
| Premium Gasoline | $ .1745 |
| Regular Gasoline | .1470 |
| Diesel Fuel (No. 2) | .1402 |
| Stove Oil | .1577 |

Shell sold no petroleum products to Pacific until November 1973 when interim federal regulations required Shell to resume sales of middle distillate fuels to Pacific. 38 Fed.Reg. 28,660 (1973). On November 14, 1973 Shell and Pacific entered into a supply contract for middle distillate fuels. This contract established the following prices:

| | Portland, Or. | Eugene, Or. | Albany, Or. |
|---|---|---|---|
| Diesel Fuel (No. 2) | $ .1435 | $ .1532 | $ .1530 |
| Stove Oil | .1640 | .1737 | .1735 |

Pursuant to the Mandatory Petroleum Allocation Regulations, 10 C.F.R. pt. 211, which became effective January 15, 1974, Shell and Pacific on February 26, 1974 entered into a supply contract for the resumption of sales of automotive gasoline to Pacific. This contract established the following prices:

| | Eugene, Or. | Albany, Or. |
|---|---|---|
| Premium Gasoline | $ .2655 | $ .2655 |
| Regular Gasoline | .2380 | .2380 |

The Mandatory Petroleum Price Regulations required Shell, as a supplier, to designate "classes of purchasers" that existed on May 15, 1973 and to classify its purchasers accordingly so that maximum allowable prices for petroleum products could be determined. 10 C.F.R. § 212.82(6). Shell determined that Pacific belonged in its "071" classification, an "other" classification that included Shell sales to resellers not provided for in other classifications, but defined specifically by Shell as including farm cooperatives. Because the Mandatory Petroleum Price Regulations required computation of the maximum allowable price for products to a particular class of purchaser on the basis of the most recent transaction with a member of the class prior to May 15, 1973, if there were no transactions on that date, Shell based the prices in the contracts with Pacific on the April 6, 1973 CENEX transaction price. 10 C.F.R. § 212.83(a)(3).

Shell continued to supply petroleum products to Pacific until October 1, 1977 when Pacific assigned its assets to CENEX. In July 1978, Pacific filed suit against Shell

alleging that Shell had overcharged Pacific by wrongly placing Pacific in Shell's "071" class of purchaser, by charging CENEX prices in violation of Special Rule No. 1, and by adding charges in excess of increased costs as cost pass-throughs.[1] By orders entered January 25, 1982 and April 13, 1982, the district judge granted summary judgment to Shell on all counts. By an order entered May 20, 1982, the district judge denied a motion for reconsideration and modification. Pacific filed a timely notice of appeal to this court.

In large part, this case has arisen because the federal regulations promulgated to enforce the EPAA use different dates as benchmarks in the allocation of and the pricing of petroleum sales. The Mandatory Petroleum Price Regulations establish May 15, 1973 as the date for use in setting price limitations for sales by refiners. 10 C.F.R. § 212.82(6). The Mandatory Petroleum Allocation Regulations, however, establish the months of 1972 as the dates for use in setting allocation requirements. 10 C.F.R. §§ 211.102, 211.122. In this case Pacific had a contractual relationship with Shell throughout 1972, but it had no ongoing commercial relationship with Shell on May 15, 1973.

The concept of a "class of purchaser" is central to the issues presented here. 10 C.F.R. § 212.31 defines a "class of purchaser" as "the purchasers to whom a person has charged a comparable price for comparable property or service pursuant to customary price differentials between those purchasers and other purchasers." 10 C.F.R. § 212.83(a)(1) establishes price limitations for petroleum purchases with respect to classes of purchaser.

In granting summary judgment on the issue of whether Shell's placement of Pacific in its "071" classification created impermissible overcharges the district judge wrote:

Shell was required to select the most similar, existing classification for Pacific Supply. Shell's selection need only be reasonable. Under the circumstances of this case, I hold that Shell's selection of the CENEX classification for Pacific Supply was reasonable.

Order of January 25, 1982, at 2 (citations omitted).

On appeal, Pacific first contends that as a matter of law it was entitled to be placed in a class of purchaser of which it was the sole member. Pacific's contention rests on two propositions: first, that there was a Pacific class of purchaser in existence on May 15, 1982 separate from the "071" CENEX class, and second, that the differences between CENEX and Pacific were such that federal regulations and rulings required that Pacific not be classified with CENEX. With respect to the first proposition, Pacific concedes that Federal Energy Administration (FEA) Rulings 1974–1 and 1975–2 require suppliers to place purchasers within a class of purchaser existing on May 15, 1973. 39 Fed.Reg. 3,910 (1974); 40 Fed.Reg. 10,655 (1975). See *Naph-Sol Refining Co. v. Cities Service Oil Co.,* 495 F.Supp. 882, 889–90 (W.D.Mich.1980); *Champlin Petroleum Co.,* 4 DOE ¶ 80,101 (1979). Pacific further concedes that Ruling 1974–1 requires that for there to be a class of purchaser in existence on May 15, 1973 of which Pacific was the only member, Pacific must have been a "present customer" of Shell on that date. *Naph-Sol Refining Co. v. Cities Service Oil Co.,* 495 F.Supp. at 890. Pacific, citing *Chevron U.S.A., Inc. & Time Oil Co.,* 5 DOE ¶ 83,007 (1980) and *Champlin Petroleum Co.,* 4 DOE ¶ 80,101 (1979), contends that it was a "present customer" of Shell on May 15, 1973, even though no contractual relationship existed between Pacific and Shell on that date, because Pacific had purchased petroleum from Shell in 1973.

The Department of Energy and its predecessor agencies are entitled to "great deference" in interpreting the statutes they enforce and the regulations they have promulgated. *Bulzan v. Atlantic Richfield Co.,*

---

1. Pacific and its member cooperatives also alleged that Shell committed various antitrust violations, but neither have appealed the district court's grant of summary judgment on these issues.

620 F.2d 278, 284 (Em.App.1980); *General Crude Oil Co. v. Department of Energy*, 585 F.2d 508, 515 (Em.App.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). Nevertheless, we read neither *Champlin* nor *Chevron* as supporting Pacific's position. In *Champlin* the supplier treated the distributor as a customer in its records on May 15, 1973 even though there was neither a sales contract nor sales after January 30, 1973. 4 DOE ¶ 80,101 at 80,-504–05. In *Chevron* there were spot sales by the supplier to the distributor both after the contract was terminated on April 23, 1973 and after May 15, 1973. 5 DOE ¶ 83,007, at 86,035; *Time Oil Co.*, 3 DOE ¶ 82,512, at 85,029 (1979). Accordingly, in neither *Champlin* nor *Chevron* was there the complete absence of an ongoing commercial relationship between the supplier and the distributor that marks this case. Moreover, we find that the greater weight of authority, as well as the more persuasive authority, supports our holding that a distributor was a "present customer" of a supplier on May 15, 1973 only if there existed some ongoing commercial relationship on that date. *Boswell Oil Co. v. Shell Oil wrCo.*, C–1–80–377 (S.D.Ohio August 6, 1982) (granting Judgment NOV on facts indistinguishable from those present here); *Eastern Airlines, Inc. v. Atlantic Richfield Co.*, 74–1207–Civ–JM (S.D.Fla. October 29, 1982); *Naph-Sol Refining Co. v. Cities Service Oil Co.*, 495 F.Supp. 882 (W.D.Mich. 1980); *Ford Oil Co.*, 5 FEA ¶ 80,557 (1977); *Saber Petroleum Corp.*, 5 FEA ¶ 80,544 (1977); *Atlantic Richfield Corp.*, 4 FEA ¶ 80,550 (1976); *Western Jobbers Alliance*, 4 FEA ¶ 87,010 (1976); *Mid-Continental, Inc.*, 3 FEA ¶ 80,577 (1975).

The proposition that federal regulations and FEA rulings required Shell as a matter of law not to place Pacific in the same class of purchaser as Shell placed CENEX is based on two principal differences between Pacific and CENEX. First, Pacific purchased petroleum products almost exclusively from Shell's Eugene and Albany terminals. CENEX, on the other hand, only purchased petroleum products from the Eugene terminal. As Pacific notes, Ruling 1975–2 in pertinent part states:

To the extent that a seller has multiple locations from which it distributes products, it should make its class of purchaser determinations on a location-by-location basis. Only to the extent that it can ultimately be determined that no customary price differentials were reflected between a seller's prices at two or more locations would it be possible for a seller to treat sales from such locations as being to the same class of purchaser.

40 Fed.Reg. 10,657. Pacific contends that due to the different prices it was charged by Shell at the Eugene and Albany terminals, it cannot be classified, in light of Ruling 1975–2, in a class of purchaser that contains members that did not purchase at different locations. Second, Pacific purchased nearly twice the volume of petroleum from Shell that CENEX purchased for the five months of 1973 when Shell supplied Pacific. Pacific again relies on Ruling 1975–2 which provides that "customary price differentials" are to be preserved in classifying purchasers and that a "customary price differential" may be based "on a difference in volume...." 40 Fed.Reg. 10,657.

■ While these arguments might have some merit if Pacific had been a "present customer" of Shell on May 15, 1973, they are inapposite where Pacific, as here, had no ongoing commercial relationship with Shell on that date. The Mandatory Petroleum Price Regulations required Shell to place Pacific in a class of purchaser that existed on May 15, 1973. Pacific has failed to identify any class of purchaser that existed on May 15, 1973 and does not contain CENEX as a member into which it could be placed; instead, Pacific merely contends that it should have been placed into a class of purchaser of which it is the sole member. Pacific does not dispute that it and CENEX have, for all relevant purposes, identical operating structures. Additionally, it is clear that the "071" classification is a part of Shell's customary classification of its purchasers. See *Western Propane, Inc.*, 1 FEA ¶ 20,205 at 20,392 (1974). Because no

class of purchaser of which Pacific was the only member existed on May 15, 1973, and because we find that the substantial similarities between Pacific and CENEX indicate that the "071" class was the "most similar, existing class" into which Shell could have placed Pacific, we hold that Shell as a matter of law was not required to place Pacific into a class of purchaser that did not include CENEX.

Pacific further contends that even if it is not entitled to be placed in a separate class of purchaser as a matter of law, summary judgment was improper because genuine issues of material fact existed as to whether Shell's placement of Pacific in its "071" class of purchaser was unreasonable.

■ We of course recognize that summary judgment is proper only where no genuine issue of material fact exists and the prevailing party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1065 (Em.App.1978). However, where, as here, the decision rests on the meaning of the words of a statute or regulation, disposition by summary judgment is appropriate. *Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1066 (Em.App.1978); *Mobil Oil Corp. v. Federal Energy Administration,* 566 F.2d 87, 92 (Em.App.1977). It is well settled that a seller's classification of its purchasers will not be overturned by the courts or federal agencies unless the classification is unreasonable. *Naph-Sol Refining Co. v. Cities Service Oil Co.,* 495 F.Supp. at 891–92; *Champlin Petroleum Co.,* 4 DOE ¶ 80,101, at 80,523–24. Accordingly, we hold that Pacific failed to raise a genuine issue of the unreasonableness of Shell's classification of Pacific in the "071" class of purchaser because Pacific provided the district court with no indication of any class that both existed on May 15, 1973 and was more reasonable than the "071" class for Shell's classification of Pacific. We do not suggest that such a showing would have sufficed to raise a genuine issue of material fact as to unreasonableness because the Mandatory Petroleum Price Regulations do not require

a seller to select one particular classification of purchasers. *Champlin Petroleum Co.,* 4 DOE ¶ 80,101, at 80,523 (1979); Ruling 1975–2, 40 Fed.Reg. 10,657; Ruling 1974–1, 39 Fed.Reg. 3,910. However, we do hold that such a showing was necessary to raise a genuine issue of the unreasonableness of Shell's classification of Pacific in the "071" class. Additionally, the significant similarities between the operating structures of Pacific and CENEX and Shell's classification of Pacific according to Shell's customary business practices are sufficient indicators of the reasonableness of the classification in this particular case to warrant summary judgment. See *Western Propane, Inc.,* 1 FEA ¶ 20,205, at 20,392 (1974).

■ Pacific's final "class of purchaser" contention is that even if Shell was entitled to classify Pacific in the "071" class with respect to purchases at Shell's Eugene terminal, Ruling 1975–2 precluded summary judgment for Shell with respect to purchases at Shell's Albany terminal due to the difference in location and the correspondingly lower price under the contract that lapsed on March 31, 1973. We recognize that the Mandatory Petroleum Price Regulations required the maintenance of customary price differentials to those purchasers who were "present customers" on May 15, 1973. Additionally, we recognize that the location of a purchase may be the basis for a "customary price differential" if it is cost-related. *Naph-Sol Refining Co. v. Cities Service Oil Co.,* 495 F.Supp. at 890. However, because Pacific was not a "present customer" of Shell on May 15, 1973, we find Pacific's argument to be inapposite.

■ Pacific further argues that even if Shell's classification of Pacific was proper, Shell's prices to CENEX arising out of the April 6, 1973 transaction violated Special Rule No. 1. Special Rule No. 1 was issued March 6, 1973, and amended May 14, 1973, as a part of the Phase III regulations issued by the Cost of Living Council (CLC). Basically, Special Rule No. 1 permitted an oil company to increase by one percent its base prices for covered products during the control year of January 11, 1973 to January 10,

1974. Special Rule No. 1 operated as a firm-wide rule that limited prices only in the aggregate. The operation of Special Rule No. 1 was prematurely terminated when the CLC issued Phase IV regulations, which became effective August 12, 1973, nearly five months before the end of the control year. After carefully reviewing the record and the law, we conclude that the district court properly granted summary judgment on this issue on the grounds that Special Rule No. 1 was superseded and made inoperative by the CLC's Phase IV regulations, that Special Rule No. 1 did not control individual prices such as the CE-NEX-Shell April 6, 1973 transaction price, and that to the extent that compliance with Special Rule No. 1 can be determined, there is no genuine issue of noncompliance.

 Pacific's final contention is that the district court erred in refusing to compel discovery and granting summary judgment for Shell on the issue as to whether Shell violated the Mandatory Petroleum Price Regulations by adding charges to its prices in excess of increased costs. Because Pacific had not formally raised the issue of cost pass-throughs until nearly four years after the initiation of litigation, we find that the district court did not abuse its discretion in refusing to compel discovery. Moreover, we agree with District Judge Owen Panner that Pacific has failed to raise a genuine issue as to whether Shell did violate the regulations by charging Pacific illegal cost pass-throughs. Accordingly, summary judgment on this issue was proper.

For the reasons outlined above, we affirm the orders of summary judgment entered by the district court.