STATE OF OKLAHOMA, ex rel. DE-PARTMENT OF HUMAN SERVIC-ES, Plaintiff-Appellant,

v.

Casper WEINBERGER, as Secretary of the United States Department of Defense, Defendant-Appellee.

No. 83–1258.

United States Court of Appeals, Tenth Circuit.

Oct. 19, 1983.

Russell D. Hall, Asst. Gen. Counsel, Legal Div., Dept. of Human Services, Oklahoma City, Okl., for plaintiff-appellant.

William S. Price, U.S. Atty. and Roger Griffith, Asst. U.S. Atty., Oklahoma City, Okl., Bernard Marcak, Dept. of the Air Force, Randolph AFB, Tex., and Charles G. Symmonds, Associate Gen. Counsel, Army and Air Force Exchange Service, Dallas, Tex., for defendant-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The Department of Human Services of the State of Oklahoma (DHS) appeals from a memorandum opinion and order granting summary judgment in favor of Casper Weinberger, as Secretary of the United States Department of Defense (DOD). The single issue presented to the district court, 582 F.Supp. 293, and raised on appeal is whether the statutory exemption from vending machine income sharing under the Randolph-Sheppard Act (Act), 20 U.S.C.A. §§ 107–107f, applies to all machines of the military exchanges or only to those machines physically located inside an exchange store.

■ At the outset, we note that summary judgment is proper when, as here, neither party contends that a genuine issue exists as to any material fact and none is present. *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982). Similarly, the questions of statutory construction and legislative history raised herein present legal questions properly resolved by summary judgment. *Union Pacific Land Resources Corporation v. Moench Investment Company, Ltd.,* 696 F.2d 88 (10th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1776, 76 L.Ed.2d 348.

A brief review of the uncontested facts is in order. Under the Act as enacted in 1936, blind persons were authorized to operate the vending facilities on federal property. As a result of limited growth within the blind vendor program, precipitated in part by the escalating use of automatic vending machines, the Act was amended in 1974. The amendments, in addition to affording blind persons a priority in the operation of vending facilities, also provided that income from vending machines on federal property be shared in specified percentages with blind vendors or state blind vendor licensing agencies similar to DHS. The amendments did provide, however, that income from certain vending machines was to be exempt from the income sharing requirements.

Specifically, 20 U.S.C.A. § 107d–3(d) provided:

*Income from vending machines in certain areas excepted*

(d) Subsections (a) and (b)(1) of this section shall not apply to income from vending machines within retail sales outlets under the control of exchange or ship's stores systems authorized by Title 10, or to income from vending machines operated by the Veterans Canteen Service, or

to income from vending machines not in direct competition with a blind facility at individual locations, installations, or facilities on Federal property the total of which at such individual locations, installations, or facilities does not exceed $3000 annually.

The Department of Health, Education and Welfare (HEW) (now the Department of Education), as the principal agency designated for carrying out the Act's provisions, issued a regulation. 45 C.F.R. § 1369.32(i), interpreting the income sharing exception as applying to "income from vending machines within operated retail outlets under the control of post exchange or ships store systems...." DOD, in issuing its regulation 32 C.F.R. § 260.3(i)(3)(i), interpreted the income sharing exception as not applying to "Income from vending machines operated by or for the military exchange or ships' stores systems."

DHS initiated the action herein after DOD refused DHS's request for distribution of vending machine income from Vance Air Force Base, Altus Air Force Base, Fort Sill Army Base and Tinker Air Force Base, all DOD installations located in Oklahoma. Within its action, DHS sought a declaration that the DOD regulation was void, an injunction against its continued enforcement, a writ of mandamus compelling the Secretary of Defense to replace the contested regulation, an accounting of vending machine income due, and an order that DOD pay all future income sharing revenue as it accrues.

After reviewing the authorities, briefs, numerous exhibits and documentary evidence submitted by the parties, the district court concluded that the DOD regulation was not contrary to the income sharing exception set forth in 20 U.S.C.A. § 107d–3(d) "and therefore the motion of the defendant [DOD] should be granted." [R. Vol. I at p. 151]. In so doing, the court accepted DOD's argument that the exception was ambiguous as evidenced by HEW's differing interpretations in its initial "draft regulation for a broad exception of income from vending machines under

the control of post exchange or ships' stores systems ... to the final regulation— that simply exempts income from vending machines within operated retail sales outlets under the control of post exchange or ships' stores systems." [R. Vol. I at p. 152].

As set forth, *supra*, the sole issue on appeal is whether the court properly concluded that the exemption from vending machine income sharing under the Act applies to *all* machines of the military exchanges, as found by the district court, or only to those machines physically located inside an exchange store.

■ We hold that the district court properly concluded that the regulation promulgated by DOD interpreting the income sharing exception as not applying to vending machines operated by or for the military exchanges or ships' stores systems was not contrary to 20 U.S.C.A. § 107d–3(d) and that DOD was entitled to summary judgment.

We agree with DHS that a literal reading of the exception limits the exception from revenue sharing only to "vending machines *within* retail sales outlets under the control of exchange or ships' store systems." However, as noted by the district court, citing to *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978), a court may adopt a restricted meaning of statutory words where the literal or unusual meaning of the words would lead to absurd results or thwart the obvious purpose of the statute. Such is the case at hand.

■ DHS' proposed interpretation that the exception applies only to machines *within* exchanges or stores would effectively deprive DOD of *all* exceptions when, as here, it is uncontested that: a typical military base is located on substantial acreage; a typical base has numerous buildings for administration, command, schools, barracks, operations, and recreation, all of which will or are likely to have vending machines located inside the building and in outdoor patios as well; very few military

exchanges vending machines are actually physically located inside an exchange; and a 1978 survey established that only 580 (1.3%) of the 43,952 Army and Air Force Exchange Service vending machines were located inside a retail store.

DHS's proposed exception interpretation is also contrary to the intent of Congress. As the district court noted:

The most persuasive evidence of Congressional intent is found in the following colloquoy between Congressmen Brademas and Sikes during house floor debate on the amendments:

"Mr. SIKES. Mr. Speaker, first let me congratulate my distinguished friend, the gentleman from Indiana (Mr. Brademas), and his committee for an important legislative accomplishment. This is a good bill and a needed bill.

Mr. Speaker, I do seek clarification on one point. I have discussed this with the distinguished gentleman, and let me ask a question.

"In section 7(d) of the amended act (section 206 of H.R. 14225), there is a statement that the income-sharing provisions as they pertain to vending machines 'within the retail sales outlets under the control of exchange or ship's store's systems authorized by title 10,' shall not apply. I would presume, and I would like the distinguished subcommittee chairman to verify for the record, that this provision *exempts from the revenue-sharing plan all those vending machines which are operated by the military post exchanges*, Navy exchanges, officer and enlisted messes, and so forth. As you are aware, the profits from these vending machines are utilized by the services to finance such worthwhile endeavors as the base libraries, the youth activities, the gymnasium, and other sports activities, hobby shops and motion picture programs, ashore and afloat. The servicemen finance these programs themselves through the revenues collected in the retail sales outlet systems as I have mentioned. To require that these revenues be shared might well necessitate the appropriation of additional funds for the defense budget. Since work in the fiscal year 1975 defense appropriations bill has been completed, the effect would be to cut off these needed programs without support.

Would the gentleman confirm for me the fact that it is the intent that this paragraph *shall not apply to the military services*, and that this is in keeping with the language on page 24 of the Senate report (S.Rep. No. 93–937) which is more specific on this issue that[n] is the conference report?

Mr. BRADEMAS. Mr. Speaker, I thank the gentleman from Florida for his fine remarks about this legislation. I am pleased to tell the gentleman that the answer to both his questions is 'Yes.'"

Congressional Record—House, October 16, 1974, H 10604. (Emphasis added). [R.Vol. I at pp. 154–155].

Finally, we believe it noteworthy to observe that the position adopted by the DOD was also endorsed by the Department of Justice (DOJ) while functioning in a neutral position. In 1981, after DHS and DOD had both filed for summary judgment, the Department of Education, as successor to HEW and the designated principal agency for carrying out the Act, formally referred the exception question to DOJ for resolution of an interagency legal dispute. DOJ rejected the literal, narrow approach of the Department of Education and DHS and instead, concluded that the DOD position was correct and consistent with the Act's legislative history.

AFFIRMED.