**Fay CROWE, Plaintiff,**

v.

**Lloyd D. FLEMING, LGR Trucking, Inc., Transamerica Trailer Leasing, Inc., Canal Insurance Company, and Trailmobile, Inc., Defendants.**

**No. CV489–175.**

United States District Court,
S.D. Georgia,
Savannah Division.

July 5, 1990.

J. Noel Osteen, Billy N. Jones, Hinesville, Ga., Jack E. Carney, Jr., Pembroke, Ga., for plaintiff.

Stanley M. Karsman, Paul W. Painter, Jr., Savannah, Ga., for defendants.

## ORDER

EDENFIELD, Chief Judge.

Before the Court are the motions for summary judgment of the defendants Transamerica Trailer Leasing, Inc. ("Transamerica") and Trailmobile, Inc. ("Trailmo-

bile"). For the reasons set forth below, the Court GRANTS the motions.

### BACKGROUND

On the night of August 8, 1988, the plaintiff, Fay Crowe, was driving south on Georgia Highway 67. As she approached the intersection of Highway 67 and Interstate Highway 16, defendant Lloyd D. Fleming was backing a tractor-trailer rig from an "on ramp" for I–16 West and across both lanes of Highway 67. Ms. Crowe, apparently unaware of the presence of the tractor-trailer, arrived at the intersection and collided with Mr. Fleming's vehicle. She suffered severe personal injury.

Ms. Crowe filed this action for damages on July 25, 1989. Her original complaint named Mr. Fleming, his employer, LGR Trucking, Inc., Transamerica, the company that had leased the trailer to LGR Trucking, and the Canal Insurance Company, the insurer for each of the other three, as defendants. Subsequently, Ms. Crowe filed an amended complaint naming Trailmobile, the manufacturer of the trailer driven by Mr. Fleming on the night of the accident, as a defendant.[1]

In her amended complaint, Ms. Crowe alleges both a negligence and a strict product liability claim. She contends that the movants, Transamerica and Trailmobile, negligently failed to provide adequate reflective materials along the trailer's sides, failed to warn the plaintiff of the insufficient lighting, and that Trailmobile, specifically, designed and manufactured a defective and unreasonably dangerous product, unsuitable for its intended use.

Both Transamerica and Trailmobile have moved for summary judgment, primarily contending that the plaintiff's claim is preempted by federal law.

### SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is only appropriate where no genuine issue of fact exists and the prevailing party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). If the record presents factual issues, "the Court must not decide them; it must deny the motion and proceed to trial." *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir.1982). Where the decision rests on the meaning of the words of a statute or regulation, however, disposition of the case by summary judgment is proper. *Pacific Supply Co–op. v. Shell Oil Co.*, 697 F.2d 1084, 1089 (Temp.Emer.Ct.App.1982); *see also State of Oklahoma, Department of Human Services v. Weinberger*, 741 F.2d 290, 291 (10th Cir.1983); *Union Pac. Land Resources Corp. v. Moench Inv. Co.*, 696 F.2d 88, 93 n. 5 (10th Cir.1982).

### ANALYSIS

#### I. Pre-emption

Ms. Crowe's theory of recovery is that, despite the defendants' compliance with federal safety regulations, the tractor-trailer manufactured and leased by them was defective. The defendants, on the other hand, argue that the plaintiff's claim for damages is pre-empted by federal law.

The supremacy clause, U.S. Const. art. VI, cl. 2, requires that conflicts between state and federal law be resolved in favor of federal rule. The clause thus prohibits the enforcement of any state law that conflicts with the exercise of federal power. *See, e.g., Fidelity Fed. Sav. & Loan Ass'n v. de La Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Regulations promulgated by federal agencies under a statutory authorization have the force of federal law and can pre-empt conflicting state law. *de La Cuesta*, 458 U.S. at 153–54, 102 S.Ct. at 3022–23; *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Additionally, the impo-

---

1. Transamerica Insurance Company, the carrier for defendants Lloyd D. Fleming, LGR Trucking, and Transamerica Trailer Leasing, Inc., was named as a defendant in the original complaint but was dismissed upon motion for summary judgment. *See* Court Order, dated January 24, 1990.

sition of damages under a state tort law claim is a form of state regulation subject to the supremacy clause. *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959); *Stephen v. American Brands, Inc.,* 825 F.2d 312 (11th Cir.1987).

▬ Federal law may pre-empt state law in three ways. First, Congress may expressly pre-empt state law by using language to that effect in a statute. *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375; *Taylor v. General Motors Corp.,* 875 F.2d 816, 822 (11th Cir.1989). Second, the text of a statute or its legislative history may evince a congressional intent to occupy a regulatory field to the exclusion of state law, despite the absence of express pre-emptive language. *International Paper Co. v. Ouellette,* 479 U.S. 481, 492, 107 S.Ct. 805, 811–12, 93 L.Ed.2d 883 (1987); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Last, even if Congress has not occupied a given regulatory field completely, state law is pre-empted to the extent that it conflicts with federal law. For example, a state law is pre-empted if the regulated party cannot comply with both state and federal regulation. *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375. Or, if a state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress by interfering with the methods employed in the federal scheme, the state law is likewise pre-empted. *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.,* 467 U.S. 461, 477–78, 104 S.Ct. 2518, 2527–28, 81 L.Ed.2d 399 (1984); *Ouellette,* 479 U.S. at 494, 107 S.Ct. at 813.

Congress passed the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381, 1391–1431 (1982) ("the Safety Act"), in 1966 to address the growing problem of injury and death on the nation's highways. *See* S.Rep. No. 1301, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S. Code Cong. & Admin.News 2709. The Safety Act authorized first the Department of Transportation and later the National Highway Transportation Safety Administration to promulgate Federal Motor Vehicle Safety Standards ("FMVSS") for vehicles and vehicular equipment in an attempt to increase automotive safety. 15 U.S.C. §§ 1391(2), 1392(a). The statute also contains the following provision:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. . . .

15 U.S.C. § 1392(d). This provision reflects the belief of Congress that the safety standards have to be uniform throughout the country to be effective. *See* S.Rep., 1966 U.S.Code Cong. & Admin.News at 2720.

Notwithstanding the above pre-emption provision, the Safety Act also includes the following "savings clause":

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C. § 1397(k).[2] Thus, the language of the Safety Act sends conflicting signals regarding congressional intent to pre-empt state law in this field.

Noting the ambiguity of the statutory text, the Eleventh Circuit recently addressed the pre-emptive status of the Safety Act. In *Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir.1989), the plaintiff brought an action against an automobile manufacturer, alleging that her car was defectively designed because it did not contain air bags. Under the applicable safety standard in effect at the time of the plaintiff's accident, car manufacturers had the option to include either passive restraints alone, passive restraints plus lap belts, or manual seat belts in their vehicles. The defendant had complied with the feder-

---

**2.** The quoted provision was formerly codified at     15 U.S.C. § 1397(c) (1982).

al standard by designing the plaintiff's car with manual seat belts. The court held that the plaintiff's claim was pre-empted.

Initially, the court found that Congress had not *expressly* pre-empted state regulation of motor vehicles and highway safety, given the conflict between the pre-emption provision and the savings clause in the statute. The court did hold, however, that the Safety Act *implicitly* pre-empted state law to the extent that state regulation potentially frustrated the federal administrative scheme. *Id.* at 825–27; *accord Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1561 (11th Cir.1983). Under federal regulation, the defendant had the option to refrain from designing a car with air bags. If the plaintiff prevailed on her state tort law claim, the flexibility afforded to the defendant by federal law would be restricted. "[A] state common law rule cannot take away the flexibility provided by a federal regulation and cannot prohibit the exercise of a federally granted option." *Id.* at 827 (citing *Fidelity Fed. Sav. & Loan Ass'n v. de La Cuesta*, 458 U.S. 141, 155, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982)).

In a case factually indistinguishable from *Taylor,* the First Circuit also held that a state tort claim based on the failure to include air bags in an automobile was pre-empted by federal safety regulations. *Woods v. General Motors Corp.*, 865 F.2d 395 (1st Cir.1988). The court prescribed a two-step analysis to determine whether a state tort claim is pre-empted by a federal motor vehicle safety standard. The defendant must show: 1) that the plaintiff's theory of recovery is directed at the same "aspect of performance" as the applicable standard;[3] and 2) that the theory of recovery is of sufficiently general applicability that a successful tort suit would be the equivalent of state regulation. *Id.* at 418. In response to the plaintiff's argument that the federal standards were minimum standards which could be supplemented by state law, *see* 15 U.S.C. § 1391(2), the court

stated that the statute did not authorize states to enact regulations more stringent than those set forth in federal legislation. *Id.* at 414; *see also* 15 U.S.C. § 1392(d). Motor vehicle manufacturers can make vehicles safer than required by federal law if they so choose, according to the court, but states cannot require them to do so. *Woods,* 865 F.2d at 414.

■ Application of the *Woods* analysis to the case at bar mandates a finding that federal standards under the Safety Act pre-empt Ms. Crowe's tort claim. As noted previously, Ms. Crowe alleges that the trailer manufactured and leased by the defendants was defective because it did not have adequate reflective materials along its side. FMVSS 108 specifies requirements for "original and replacement lamps, reflective devices, and associated equipment" on various types of motor vehicles, including trucks and trailers. 49 C.F.R. § 571.108S1–S3 (1989). The stated purpose of FMVSS 108 is:

> [T]o reduce traffic accidents and injuries and deaths resulting from traffic accidents, by providing adequate illumination of the roadway, *and by enhancing the conspicuity of motor vehicles on public roads so that their presence is perceived and their signals understood, both in daylight and in darkness or other condition of reduced visibility.*

49 C.F.R. § 571.108S2 (emphasis added).

The standard then sets forth a plethora of requirements for reflective devices on motor vehicles. The trailer in the instant case was required to have four red and two amber reflex reflectors, two red and two amber side marker lamps, two amber intermediate side reflex reflectors, and two amber intermediate side marker lamps. 49 C.F.R. § 571.108S5.3.1–5.3.1.1, Table I. Table II in FMVSS 108 specifies the location of each of these required reflective devices.[4]

---

3. *See* 15 U.S.C. § 1392(d).

4. The requisite locations are as follows: 1) Reflex reflectors—one red reflector on each side of the vertical line on the rear of the trailer, as far apart as practicable and at the same height, one

red reflector on each side of the trailer at the rear, and one amber reflector on each side of the trailer at the front; 2) Side marker lamps—same location as reflex reflectors; 3) Intermediate side reflex reflectors—one amber reflector

The regulation allows, but does not require, the use of reflective sheeting or tape instead of side reflex reflectors if this material meets the performance standards for reflective devices. *Id.* at S5.1.1.4. FMVSS 108 forbids the use of additional lamps, reflective devices, or other motor vehicle equipment if they would impair the effectiveness of the required lighting equipment. *Id.* at S5.1.3.

Ms. Crowe concedes that the trailer at issue complied with FMVSS 108. She contends, however, that use of reflective tape to enhance the conspicuity of a trailer does not pertain to the same "aspect of performance" of FMVSS 108 and the requirements listed therein, apparently because the standard does not mandate the use of this material. Her argument is not persuasive.

The purpose of FMVSS 108 is to insure safety by enhancing conspicuity of vehicles on the roads. The standard applies to lamps and reflective devices on trucks and trailers. As noted in substantial detail above, the regulations list what reflective devices must be used and where they must be located. The standard even addresses the use of reflective tape for the purpose of improving the visibility of motor vehicles. Thus, FMVSS 108 directly addresses the same aspect of performance as Ms. Crowe's theory of recovery.[5]

The second prong of the *Woods* analysis—whether Ms. Crowe's theory of recovery is sufficiently general as to become regulation—is also satisfied. If Ms. Crowe were to prevail on her claim, trailer manufacturers and lessors effectively would be required, in the state of Georgia, to put reflective tape or some equivalent continuous reflective material on their vehicles or risk imposition of liability. To argue that this tort claim is not in fact regulation, simply because the defendants could elect to pay damages in future law suits rather than to place additional reflective devices on their trailers, is specious. Such a choice is "akin to the free choice of coming up for air after being underwater." *Kennan v. Dow Chemical Co.,* 717 F.Supp. 799, 806 (M.D.Fla.1989)(quoting *Palmer v. Liggett Group,* 825 F.2d 620, 627–28 (1st Cir. 1987).[6]

The Court's decision is governed by the Eleventh Circuit's opinion in *Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir. 1989). In that case, as noted above, the court held that a state common law rule cannot prohibit the exercise of an option authorized by federal regulation. *Id.* at 827. The defendants in this case were

---

on each side at or near the midpoint between the front and rear side reflex reflectors; 4) Intermediate side marker lamps—one amber side marker lamp on each side at or near the midpoint between the front and rear side marker lamps.

5. The Court's analysis is entirely consistent with the cases cited by the plaintiff in support of her position. In *Chrysler Corp. v. Rhodes,* 416 F.2d 319 (1st Cir.1969), and *Chrysler Corp. v. Tofany,* 419 F.2d 499 (2nd Cir.1969), the courts first looked to the purpose and scope FMVSS 108 to determine to what aspect of performance it pertained. The courts then evaluated the specific requirements of the standard and the categories of equipment and vehicles covered by it. *Rhodes,* 416 F.2d at 324; *Tofany,* 419 F.2d at 509. Although the courts in these cases found that state regulation was not pre-empted by federal law, their legal analysis leads to the opposite conclusion in this action. The different result can be attributed to dissimilar facts—not to the application of a different legal standard.

6. Ms. Crowe also argues that her theory of recovery is not of general applicability because tractor-trailers similar to the one in this case constitute less than 2% of the vehicles driven on the highways, and because the plaintiff is not seeking to require a specific type of additional reflective material. Her contention lacks merit.

In making the determination whether the underlying theory in a state tort claim is generally applicable, the Court must consider the scope of the relevant federal regulation. *Woods,* 865 F.2d at 408–13. The requirements of FMVSS 108 that pertain to this case apply only to trucks and trailers similar in size and appearance to the one at issue. Because the design defect alleged by Ms. Crowe is not particular to the single trailer in the case at hand, her theory of recovery is generally applicable to all vehicles regulated by these requirements. *See id.* at 410. That she does not seek to require a specific type of additional reflective material is irrelevant. If she prevails in this action, state tort law would mandate that trailer manufacturers and lessors place reflective material on their vehicles in excess of that specifically required by federal regulation. Such a result contravenes the text of the Safety Act, 15 U.S.C. § 1392(d), and federal pre-emption law.

*permitted* under FMVSS 108 to use reflective tape or additional reflective devices but were not *required* to do so. The plaintiff seeks, through the imposition of tort liability, to make the use of such materials a requirement. Because her theory of recovery contravenes the methods chosen by Congress to accomplish the objectives set forth in the Safety Act, Ms. Crowe's claim, against Transamerica and Trailmobile, is pre-empted by federal law.[7]

## II. Vicarious Liability

In Count I of her amended complaint, Ms. Crowe seemingly alleges that all of the defendants, including Transamerica and Trailmobile, were responsible for the actions of co-defendant Lloyd D. Fleming, the driver of the tractor-trailer at the time of the accident. Plaintiff's Amended Complaint, para. 31(a)–(e). Although she later denies basing her claim against the movants on a theory of "vicarious liability," Plaintiff's Brief in Opposition to the Motions for Summary Judgment, at 17, the Court feels compelled to address briefly the issue of the movants' liability for the acts of Mr. Fleming.

■ Georgia statutory law codifies the common law doctrine of respondeat superior, holding a master liable for the acts of his servant in the course of his employment. Ga.Code Ann. § 51–2–2.[8] A master is "one who employs another to perform services and who controls or has the right to control the physical conduct of the person employed in the performance of those services." *Farmer v. Ryder Truck Lines, Inc.*, 245 Ga. 734, 737 n. 2, 266 S.E.2d 922 (1980) (quoting 20 E.G.L. 356, Master and Servant, § 2). In making the determination whether a master-servant relationship exists, a court must consider whether the servant was subject to the order and control of the purported master and was liable to be discharged by him for disobedience. *Id.* at 739, 266 S.E.2d 922.

■ In the instant case, neither Transamerica nor Trailmobile had a master-servant relationship with Mr. Fleming. As the manufacturer of the trailer, Trailmobile had no affiliation whatsoever with Mr. Fleming or with his employer, LGR Trucking. Transamerica's relationship with LGR Trucking was that of lessor-lessee. Mr. Fleming signed the lease agreement as the agent of his employer, but that agreement evinces no intent on behalf of Transamerica to control or direct the activities of Mr. Fleming in the scope of his employment. Thus, neither movant can be considered the master or employer of Mr. Fleming.

■ In addition, the movants are not responsible for the negligence of Mr. Fleming on the basis of an agency relationship. Such relationship arises "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." Ga.Code Ann. § 10–6–1. Similar to the role of a master, a principal assumes the right to control the time and manner of his agent's work. *McMullan v. Georgia Girl Fashions, Inc.*, 180 Ga.App. 228, 230, 348 S.E.2d 748 (1986). Under Georgia law, franchising and licensing agreements have been deemed insufficient to establish an agency relationship. *Id.; Strickland v. ITT Rayonier, Inc.*, 162 Ga.App. 317, 291 S.E.2d 396 (1982).

As noted above, Trailmobile had no contact with Mr. Fleming or LGR Trucking, and Transamerica simply leased the trailer to them. The lease did not give Transamerica the right to direct or control Mr. Fleming in the performance of his employ-

---

**7.** *Verna v. United States Suzuki Motor Corp.,* 713 F.Supp. 823 (E.D.Pa.1989), is in accord with the Court's decision. The court in that case held that FMVSS 108 pre-empted a state tort action based on negligence, strict product liability, and breach of warranty. The defendant had designed a motorcycle without a modulating headlamp. Under the requirements of FMVSS 108 in effect at the time of the plaintiff's accident, motorcycles were required to have steady burning headlamps. The court held that the plain-

tiff's cause of action was invalid because it conflicted with the relevant regulations.

**8.** Ga.Code Ann. § 51–2–2 reads:

Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.

ment duties and did not give Mr. Fleming the right to act on behalf of Transamerica. Therefore, the movants also cannot be held liable for Mr. Fleming's actions under an agency theory.

## CONCLUSION

For the reasons expressed above, the Court GRANTS the defendants' motions for summary judgment and DISMISSES the action against Trailmobile, Inc. and Transamerica Trailer Leasing, Inc. WITH PREJUDICE.

SO ORDERED.