**Ben MYRICK, et al., Plaintiffs,**

**v.**

**FRUEHAUF CORPORATION, et al., Defendants.**

**Civ. A. No. 1:91-CV-0465-JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

March 26, 1992.

James Edward Carter, The Carter Firm, Madison, Ga., Charles Allison Mathis, Jr., Mathis, Sands, Jordan & Adams, Milledgeville, Ga., for plaintiffs.

Benjamin Louis Weinberg, Jr., Long, Weinberg, Ansley & Wheeler, Richard B. North, Jr., Edgar Adams Neely, III, Eugene Casey Brock, II, Neely & Player, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendant Freightliner Corporation's motion for summary judgment on grounds that plaintiffs' state law claims are preempted by federal law. Both parties have requested oral argument. However, because there are no disputed facts and disposition of defendant's motion turns purely on legal grounds, the request for oral argument will be DENIED.

## I.  FACTS

The following facts are undisputed. On February 6, 1989 a truck operated by Munson Transportation, Inc., collided with a vehicle being driven by plaintiff, Ben Myrick, on U.S. Highway 441 in Morgan County, Georgia. The Munson truck tractor was manufactured by defendant Freightliner Corporation. Its trailer was manufactured by defendant Fruehauf Corporation. Neither the truck nor trailer were equipped with anti-lock braking devices. Plaintiff seeks damages under state tort law on account of this alleged defect.

## II.  APPLICABLE LAW

Defendant Freightliner moves for summary judgment on grounds that plaintiff's state law tort claims are preempted by Standard Number 121, 49 C.F.R. § 571.121, promulgated under the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1431 (hereinafter "Safety Act"). Standard 121 regulates air braking systems used on trucks, trailers, and buses.

■ Plaintiffs ask the court to treat Freightliner's motion for summary judgment as a motion to dismiss because no factual or evidentiary questions are involved.[1] It is true that defendants could have raised the preemption issue in a timely-filed motion to dismiss. However, it is also appropriate to consider preemption issues on summary judgment. *See, e.g., Papas v. Upjohn Co.,* 926 F.2d 1019, 1020 (11th Cir.1991) (preemption of state law claims by federal pharmaceutical labeling regulations); *see also Crowe v. Fleming,* 749 F.Supp. 1135, 1137 (S.D.Ga.1990) and cases cited therein. Defendants' motion will be treated as one for summary judgment.

### A.  *National Traffic and Motor Vehicle Safety Act*

The Safety Act contains both a preemption clause and a savings clause. The preemption clause provides,

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of the State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance as such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d). The savings clause provides, "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c).

### B.  *Standard 121*

When it was originally adopted, certain provisions of Standard 121 imposed stopping distance requirements that could only be met through the installation of anti-lock braking devices. However, in *Paccar, Inc. v. National Highway Traffic Safety Administration,* 573 F.2d 632 (9th Cir. 1978), *cert. denied,* 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 172 (1978), the Ninth Circuit ruled that the provisions of Standard

---

**1.** The court notes that plaintiff's brief was filed in violation of this court's case instructions. Plaintiff's brief exceeded the court's page limit by eight pages. Plaintiffs also failed to index their brief. Had this violation come to the court's attention earlier, by motion of the defendants or otherwise, plaintiffs' brief would have been stricken from the record.

121 requiring heavier axles and anti-lock devices on trucks and trailers should be suspended. *Id.* at 643.[2] Following *Paccar,* the National Highway Traffic Safety Administration amended section 3 of Standard 121 to provide "notwithstanding any language to the contrary, sections S5.3.1, S5.3.1.1, S5.3.2, S5.3.2.1, S5.3.2.2, S5.7.1, S5.7.3(a), S5.7.3(b) of this standard are not applicable to trucks and trailers...." However, those provisions were left in the standard so that they could be ·

> easily reinstated when suitable solutions to the requirements laid down by the Court are found. In addition, by retaining the standard's language in its entirety in its existing form, manufacturers are made aware of what the agency still considers to be reasonable standards for minimum acceptable performance, and those manufacturers that wish to construct their vehicles in accordance with the non-mandatory sections of the standard will have the necessary guidance to do so.

44 F.R. 46849 (1979). Thus, after *Paccar* and the amendment to Standard 121, installation of anti-lock braking devices is clearly "optional." The unstated but inescapable corollary is that manufacturers may comply with Standard 121 by opting to produce trucks and trailers without anti-lock devices.

### C. *Implied Preemption*

■ Relying on *Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir.1989), defendants argue that plaintiffs' state statutory and common law claims are "impliedly preempted" by Standard 121. In *Taylor,* the court reviewed the principle of implied preemption:

**2.** Although the regulation did not specifically require anti-lock braking systems, "as a practical matter and beyond doubt, that anti-lock was necessary to meet the standard." *Paccar,* 573 F.2d at 643 n. 26.

**3.** In *Taylor* the court reviewed the three types of federal preemption.

> First, Congress, in drafting a statute, may use language and dictates the extent to which the statute preempts state law. Second, despite the absence of such language, the wording of the statute or its legislative history may evince Congress' intention to occupy giving regula-

Our analysis begins with the principle that federal law preempts state law when the state law creates "a potential frustration of the administrative scheme provided by [the federal law]," *Howard v. Uniroyal, Inc.,* 719 F.2d 1552, 1562 (11th Cir.1983), or when the state law "interferes with the methods by which the federal statute was designed to reach [its] goal." *International Paper Co. v. Ouellette,* 479 U.S. 481, 494, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987).

The court held that plaintiff's state tort law claim against the defendant automobile manufacturers for failure to equip vehicles with air bags was "impliedly preempted by the Safety Act."[3]

■ The principle of implied preemption applies whether the federal law is embodied in a statute or regulation, *see Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (holding that "[f]ederal regulations have no less pre-emptive effect than federal statutes"), and whether the state law is rooted in a statute, regulation, or common law rule. State common law claims are preempted because "the duties imposed through state common law damage actions have the effect of requirements that are capable of creating an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Stephen v. American Brands, Inc.,* 825 F.2d 312, 313 (11th Cir.1987) (adopting decision and reasoning of *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 187 (3d Cir. 1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987)).

> tory field to the exclusion of state law. Third, even when Congress has not occupied the entire regulatory field, federal law nevertheless may implicitly preempt state law to the extent that state law conflicts with federal regulatory scheme. [Cites omitted].

*Taylor,* 875 F.2d at 822. The court found that the third type of preemption applied. *Id. See English v. General Electric,* 496 U.S. 72, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); *Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1552 (11th Cir.1991).

The *Taylor* court noted that there is no strong presumption against implied preemption and that preemptive intent may be inferred solely from effects. 875 F.2d at 826. "Where the preemptive intent behind the federal regulatory scheme is unclear from its statutory language or legislative history, the federal law nevertheless preempts the state law to the extent that ordinary application of the two laws creates a conflict." *Id.* (citing *Brown v. Hotel & Restaurant Employees & Bartenders International Union,* 468 U.S. 491, 501, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984)).

In *Taylor* the applicable regulation allowed manufacturers to choose between manual seat belts and automatic passive restraint systems. Reviewing the pertinent Supreme Court cases, the court held that "a state cannot impose common law damages on individuals for doing what a federal act or regulation 'authorized them to do.' " 875 F.2d at 827 (citing *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258 (1981)). "[A] state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option." *Id.* at 827; *see Fidelity Federal Savings & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 155, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982) (California common law rule that due on sale clauses were unenforceable was preempted by federal regulation that permitted but did not compel the use of due on sale clauses).

■ Plaintiffs attempt to distinguish *De la Cuesta,* arguing that there was no savings clause in that case. However, the Act's savings clause is not a bar to implied preemption. *Taylor,* 875 F.2d at 827 n. 20.[4] *See also Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1989); *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1124 (3d Cir.1990) (allowing manufacturer choice of

restraint systems was an essential element of regulatory framework and preempted common law product liability claims); *Crowe v. Fleming,* 749 F.Supp. 1135 (S.D.Ga.1990). The savings clause would protect a cause of action alleging that some component of a braking system was defective if the overall system met the performance and design criteria in Standard 121. However, plaintiffs' claim is based on an allegation that defendants should have installed another type of braking system, not that some part of the system actually installed was inherently defective.

Even if the court were to assume, which it does not, that plaintiffs are correct in contending that the failure to install antilock devices constituted negligence or resulted in an inherently defective product, allowing plaintiffs' state statutory or common law claims to proceed in this action would, in effect, establish a performance standard stricter than those set forth in Standard 121. Such a result is prohibited by 15 U.S.C. § 1392(d) (state safety standards not identical to federal standards are preempted). *See Taylor,* 875 F.2d at 827 n. 20; *Wood v. General Motors Corp.,* 865 F.2d 395, 402 (1st Cir.1988) (followed in *Taylor*); *Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1989) (following *Wood*).

In *Crowe v. Fleming, supra,* the court held that a common law claim based on failure to install reflective tape on the side of a trailer was preempted because the theory of recovery was in conflict with the method chosen by Congress to accomplish the goals of the Act and because the theory directly addressed the same aspect of performance. As in the case at bar, the standards regulated but did not require use of reflective tape. The court concluded that to allow the claim would establish a state regulation requiring use of reflective material.

4. The court stated,
   We reject the appellant's argument that the Safety Act savings clause forecloses a finding of implied preemption. *See Wood v. General Motors Corp.,* 865 F.2d 395, 415–16 (1st Cir. 1988) (citing *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d

883 (1987), and *Texas & Pacific Railway v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), for the proposition that "general" savings clause, such as that contained in the Safety Act, does not preclude a finding of implied preemption).

Plaintiffs argue that *Taylor* may be distinguished because the regulation at issue there required manufacturers to choose between specified restraint systems while Standard 121 contains no federally mandated options. Plaintiffs contend that the exemption of trucks and trailers from the regulation's provisions regarding anti-lock brakes amounts to no regulation of anti-lock braking devices and, therefore, there is no conflict with state law. However, the focus of plaintiffs' argument is too narrow. The question is not whether anti-lock braking devices are regulated by Standard 121 but whether the design and performance of truck and trailer air brake systems in general are regulated by the statute. If so, state law may not impose stricter or conflicting standards.

Only those parts of Standard 121 that would require the installation of anti-lock devices do not apply to trucks and trailers. Except for stopping distances, all other aspects of air brake systems on trucks and trailers are regulated by Standard 121, including: reservoirs; towing vehicle protection systems; pressure gauges and warning systems; brake actuation, release, and recovery times; deceleration rates and temperatures; parking brake systems; and road testing. Plaintiffs' claim that truck and trailer braking systems are no longer regulated after *Paccar* is untenable.

The amendment of Standard 121 to conform with the court's decision in *Paccar* was intended to preserve the option of *not* installing anti-lock braking devices until such devices had been improved and subjected to further testing. Deletion of the provisions that would have required anti-lock devices was intended to *promote* safety. Plaintiff's theory that failure to install such devices results in an inherently unsafe system directly conflicts with the purpose behind the amendment of Standard 121. Not only would a common law standard requiring the installation of anti-lock devices conflict with the federal standard, it would defeat the policy behind the Safety Act by imposing a design requirement that the Department of Transportation judges to be unsafe, having chosen not to require such devices until they are more reliable.

Plaintiffs' final argument is that the court's decision in *Taylor* is flawed and should not be followed. Plaintiffs are in effect asking this court to overrule the Eleventh Circuit. The court suggests that plaintiffs' counsel consult a basic textbook on civil procedure or practice in the federal courts.

## III. CONCLUSION

Defendants' motion for summary judgment [10–1] is GRANTED. The court DENIES both parties' request for oral arguments on the motion.

Although defendant Fruehauf Corporation did not join in Freightliner Corporation's motion for summary judgment, it appears that those claims are also subject to preemption for the reasons set forth above. Defendant Fruehauf is therefore GRANTED LEAVE to file a motion for summary judgment within ten (10) days of the entry of this order. While the motion must meet the requirements of Local Rule 220–5, Fruehauf need only show that the principles set forth above also apply to plaintiff's claim against it.

Plaintiffs shall have ten (10) days to respond to the motion. Plaintiffs' response should likewise be limited to showing that plaintiffs' claims against defendant Fruehauf should not be preempted. However, the court will not reconsider the legal issues resolved above. Both plaintiffs and defendants' briefs should be limited to five (5) pages.

SO ORDERED.